(No. 45138.-

J. G. STEIN, Appellee, v. MICHAEL J. HOWLETT, Auditor of Public Accounts, *et al.,* Appellants.

*Announced June 23, 1972.—Opinion filed September 20, 1972. Rehearing denied November 29, 1972.*

WILLIAM J. SCOTT, Attorney General, of Springfield (WARREN K. SMOOT and DONALD S. CARNOW, Assistant Attorneys General, of counsel), for appellants.

HARRY A. YOUNG, JR., ROBERT J. LIFTON, and ALLEN C. ENGERMAN, all of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The issue in this case is the constitutionality of the Illinois Governmental Ethics Act, as amended by House Bill 3700 of the 77th General Assembly (P.A. 77—1806), effective January 24, 1972. (Supp. to Ill.Rev.Stat. 1971, ch. 127, par. 601—101 *et seq.*) The trial court held the Act unconstitutional and the defendants appealed directly to this court pursuant to Supreme Court Rule 302(a). Ill.Rev.Stat. 1971, ch. 110A, par. 302(a).

The plaintiff challenges the constitutionality of the amended Act, herein called the Ethics Act, on the following grounds: (1) that it is an unconstitutional invasion of the right of privacy, (2) that it unduly restricts the right to seek and hold office, (3) that it is overbroad and unconstitutionally vague, (4) that it discriminates between persons of the same class, (5) that it goes beyond the limitations prescribed by section 2 of article XIII of the 1970 Illinois constitution and violates the doctrine of

separation of powers among the branches of the government, (6) that it contains more than one subject, (7) that it purports to specify a penalty in addition to that provided by the constitution and that the constitutional penalty cannot be changed by the legislature, (8) that it violates section 2 of article XIII of the constitution in that it excludes from disclosure, assets and income most likely to produce conflicts of interest, *i.e.,* campaign receipts, (9) that the law is *ex post facto* because officials who were elected prior to July 1, 1972, are required to meet qualifications which did not exist when they were elected, and (10) that it delegates to the Secretary of State the power to render advisory opinions and to hire private attorneys to assist him in so doing in violation of the constitution.

The confirmation of the right of privacy as a constitutional right is found in section 6 of article I of the 1970 constitution which expressly states, for the first time in our State charters, that people "have the right to be secure in their persons, houses, papers and other possessions against \*\*\* *invasions of privacy* \*\*\*." (Italics ours.) No limiting definition of the type of privacy is stated in the constitution.

Specifically, the plaintiff complains that the Ethics Act is too broad and is an unjust encroachment upon the right of privacy because section 4A—102 requires certain disclosures. It provides:

> "The statement of economic interests required by this Article shall include the economic interests of the person making the statement as provided in this Section. The interest (if constructively controlled by the person making the statement) of a spouse or any other party, shall be considered to be the same as the interest of the person making the statement. Campaign receipts shall not be included is this statement.
>
> (a) The following interests shall be listed by all persons required to file:
>
> (1) The name, address and type of practice of any professional organization or individual professional practice in which the person making the statement was an officer,

director, associate, partner or proprietor, or served in any advisory capacity, from which income in excess of $1200 was derived during the preceding calendar year;

(2) The nature of professional services (other than services rendered to the unit of government in relation to which the person is required to file) and the nature of the entity to which they were rendered if fees exceeding $5,000 were received during the preceding calendar year from the entity for professional services rendered by the person making the statement.

(3) The identity (including the address or legal description of real estate) of any capital asset from which a capital gain of $5,000 or more was realized in the preceding calendar year.

(4) The name of any unit of government which has employed the person making the statement during the preceding calendar year other than the unit of government in relation to which the person is required to file.

(5) The name of any entity from which a gift or gifts, or honorarium or honoraria, valued singly or in the aggregate in excess of $500, was received during the preceding calendar year.

(b) The following interests shall also be listed by persons listed in items (a) through (f) of Section 4A—101.

(1) The name and instrument of ownership in any entity doing business in the State of Illinois, in which an ownership interest held by the person at the date of filing is in excess of $5,000 fair market value or from which dividends of in excess of $1,200 were derived during the preceding calendar year. (In the case of real estate, location thereof shall be listed by street address, or if none, then by legal description). No time or demand deposit in a financial institution, nor any debt instrument need be listed;

(2) Except for professional service entities, the name of any entity and any position held therein from which income of in excess of $1,200 was derived during the preceding calendar year, if the entity does business in the State of Illinois. No time or demand deposit in a financial institution, nor any debt instrument need be listed.

(3) The identity of any compensated lobbyist with whom the person making the statement maintains a close economic association, including the name of the lobbyist and specifying the legislative matter or matters which are the object of the lobbying activity, and describing the

general type of economic activity of the client or principal on whose behalf that person is lobbying.

(c) The following interests shall also be listed by persons listed in items (g), (h) and (i) of Section 4A—101:

(1) The name and instrument of ownership in any entity doing business with the unit of local government in relation to which the person is required to file if the ownership interest of the person filing is greater than $5,000 fair market value as of the date of filing or if dividends in excess of $1,200 were received from the entity during the preceding calendar year. (In the case of real estate, location thereof shall be listed by street address, or if none, then by legal description). No time or demand deposit in a financial institution, nor any debt instrument need be listed.

(2) Except for professional service entities, the name of any entity and any position held therein from which income in excess of $1,200 was derived during the preceding calendar year if the entity does business with the unit of local government in relation to which the person is required to file. No time or demand deposit in a financial institution, nor any debt instrument need be listed.

(3) The name of any entity and the nature of the governmental action requested by any entity which has applied to the unit of local government in relation to which the person must file for any license, franchise or permit for annexation, zoning or rezoning of real estate during the preceding calendar year if the ownership interest of the person filing is in excess of $5,000 fair market value at the time of filing or if income or dividends in excess of $1,200 were received by the person filing from the entity during the preceding calendar year." Supp. to Ill.Rev.Stat. 1971, ch. 127, par. 604A—102.

The plaintiff argues that the statute requires the disclosure by a public official of: (a) any professional practice from which he received more than $1200, even if no services were performed for the State or for any client who did business with or was subject to licensing by the State; (b) the nature of professional services to any entity if the fees exceeded $5,000, even if that entity had no contact with the State; (c) the identity of any capital asset from which he received a capital gain of $5,000, or more, even if there were no connection with the State; (d) the

name of any entity giving him gifts or honoraria totaling in excess of $500, even if there is no connection with the State of Illinois; (e) the name of any entity doing business within the State in which he has an interest in excess of $5,000 or earned in excess of $1200 in dividends, even if that business in Illinois did no business with nor was required to be licensed by the State; and (f) the name of any business within the State of Illinois from which he received more than $1200 in income, even if that business did not do business with nor was subject to licensing by the State.

By use of the "even if" clauses, the plaintiff questions how the disclosure of a business connection, unrelated to any activity of the State serves to avoid the conflicts of interest hoped to be disclosed and obviated by the statute. We acknowledge that the disclosure of a business connection which is truly unrelated to any State activity cannot help to achieve the desired purpose. But who is to say whether or not there is a business connection or relation with the State? Who is to say that the business within the State which does not do business directly with the State, but which supplies another company which does, has no connection with the State? Who is to say that a capital gain from the sale of an asset to a stockholder of a company doing business with the State has no connection with the position of the public official?

In all of these instances, and in innumerable others, the public official could be directed to state what transactions and what business interests relate to his public duties. If that were the case, the statute could have been connection with the State? Who is to say that a capital gain from the sale of an asset to a stockholder of a company doing business with the State has no connection with the position of the public official?

In all of these instances, and in innumerable others, the public official could be directed to state what transactions and what business interests relate to his public duties. If that were the case, the statute could have been

more narrowly drawn and more precisely defined. However, that is a result which the legislature may well have sought to avoid.

The Ethics Act was designed to avoid any conflict of interest between the government and its officers and employees; one purpose of the Act was to disclose any abuse of office and to instill in the public, trust and confidence in its government and officials.

For these reasons it seems appropriate to us to require disclosures of sources of substantial amounts of income and of significant business interests. It would be an anomaly to enact a statute, designed to eliminate conflicts of interest between public trust and private gain, in such manner that the person affected is permitted to decide when a financial interest relates to his public employment. The purpose of the legislation supports the necessity for broad statutory coverage in this area. We believe that the statute as cast reflects the compelling governmental interest which is paramount to the rights of the individual, and that the statute is not overbroad as an unconstitutional invasion of privacy. *Bates v. City of Little Rock (1960), 361 U.S. 516, 4 L.Ed.2d 480, 80 S.Ct. 412; United States v. O'Brien (1968), 391 U.S. 367, 20 L.Ed.2d 672, 88 S.Ct. 1673; NAACP v. Alabama (1958), 357 U.S. 449, 2 L.Ed.2d 1488, 78 S.Ct. 1163;* and *Zemel v. Rusk (1965), 381 U.S. 1, 14 L.Ed.2d 179, 85 S.Ct. 1271.*

Additionally, we find no constitutional prohibitions against this manner and method of legislating.

In arriving at the above conclusion, we are aware that our decision is contrary to that of the California Supreme Court in *City of Carmel-By-The-Sea v. Young (1970), 2 Cal. 3d 259, 85 Cal. Rptr. 1, 466 P.2d 225,* which held a public disclosure act to be too broad and an unconstitutional invasion of privacy. However, *City of Carmel-By-The-Sea* is distinguishable in that the California constitution contains no provision similar to section 2 of article XIII of the Illinois constitution which provides that "All candidates for or holders of state offices and all members

of a Commission or Board created by this Constitution shall file a verified statement of their economic interests, as provided by law"; and which authorizes the legislature to impose similar requirements upon candidates for, or holders of, offices in units of local government and school districts. Also under the California act there was no distinction between State and local public officials as to the degree of disclosure. Under our Ethics Act those who would be generally designated as State officials are required to list ownership interest in any entity "doing business in the State of Illinois" if that ownership interest has a value in excess of $5,000, or if dividends or earnings in excess of $1200 were received from the entity during the preceding year. Local public officials list such interest only if the business entity does business with the local governmental unit with which the person is connected. The California court objected to the identical treatment given both statewide and local officials under their act.

The plaintiff also contends that the statute unconstitutionally restricts the right to seek and to hold office. Our constitution specifically provides that all candidates for or holders of State offices shall file a verified statement of their economic interests, as provided by law. These are among the constitutional prerequisites of being a candidate for or holder of State office in Illinois, and the constitution authorizes the imposition of similar requirements upon candidates for or holders of local offices.

The plaintiff contends that the statute is unconstitutionally vague and violates the constitutional guaranty of due process in that it requires among the financial interests to be disclosed, those of a spouse or other person "if constructively controlled by the person making the statement." Elsewhere the statute requires those holding State offices to disclose the identity of compensated lobbyists with whom the person making the statement maintains "close economic association." "Constructive control" and "close economic association" are not further defined. We do not believe they need be. We find that this language is

sufficiently explicit to inform those who are subject to it of the conduct on their part to which it applies. *Connally v. General Construction Co., (1925), 269 U.S. 385, 70 L.Ed. 322, 46 S.Ct. 126.*

In *People v. Adduci (1952), 412 Ill. 621,* the legislation in question provided that no member of the General Assembly should "become, directly or indirectly, interested in any such contract." At page 627, the court stated: "Whether or not the interest in any given case comes within the prohibition of the statute may well become a question of construction for the court in view of all the facts and circumstances shown in the particular case."

The fact that a statute might be susceptible of misapplication does not necessarily make it unconstitutional. In *People v. Raby (1968), 40 Ill.2d 392,* the statute relating to disorderly conduct was attacked as being too vague and unreasonably broad. In rejecting these contentions, we stated that the statute could be interpreted in a manner which would drain all sense and meaning out of its provisions or in a manner that would render it unreasonably broad and thus unconstitutional. But we held that the possibility of such irrational interpretation or unduly broad construction would not cause the statute to be unconstitutional. 40 Ill.2d at 396-397.

In *People v. Reiner (1955), 6 Ill.2d 337,* the court held that the requirement of a statute that "similar" offenses be reported did not render the enactment unconstitutionally vague. At pages 344 and 345 the court stated: "To deny to the legislature the power to use a generic description, if pressed to its logical conclusion, would practically nullify legislative authority by making it essential that the legislature should define, without the use of the generic terms, all the specific instances to be brought within it."

We cannot, and need not in this proceeding, pass upon all hypothetical situations and tenuous circumstances

which may be presented by counsel. While we recognize that a valid statute may be unconstitutionally applied, the precise limitations to be placed on the words in question can best be specified when actual cases requiring such interpretation are presented. *People v. Bertsche (1914), 265 Ill. 272, 283.*

The plaintiff also contends that the statute discriminates between persons of the same "legislative" class. This argument is based upon the different types of disclosure required in part from State officials as distinguished from local officials. However, the difference in the class of persons affected is found in the constitution itself. Section 2 of article XIII of the 1970 constitution provides that "All candidates for or holders of state offices and all members of a Commission or Board created by this Constitution shall file a verified statement of economic interests, as provided by law. The General Assembly by law may impose a similar requirement upon candidates for, or holders of, offices in units of local government and school districts." The candidates for or holders of State offices are a class which the legislature must include within the requirement of filing the verified statement, and it is within the discretion of the legislature to include the local officers within this requirement. The persons involved are not of the same legislative class.

The plaintiff also argues that the words "candidates for or holders of," as used in section 2 of article XIII, indicate that all such offices are elective, and that the legislature may not require persons other than elective office holders to file statements of economic interests. One of the purposes of the constitutional provision relating to the disclosure of economic interests was apparently to avoid an argument that might have been advanced against "ethics" legislation enacted in the absence of constitutional authorization. That argument would have been that the legislation requiring disclosure sets forth an additional qualification for constitutional officers which is invalid

because the constitution states the qualifications for such officers, and that the legislature can not make any additions thereto. (See *People ex rel Nachman v. Carpentier (1964), 30 Ill.2d 475.*) The inclusiveness of these words was raised in the debates of the constitutional convention. From the totality of the debates, it appears that "holders of state offices" included both elected and appointed State officers. The word "candidate" was added—after the debate and conclusion that the disclosure requirements should apply to both the elected and appointed "holders of state offices"—to also include those persons who were running for the various offices.

No constitutional provision was needed to empower the General Assembly to enact disclosure requirements relative to state and local government employees or holders of legislatively created offices. This power was inherent in the legislature. Article II of the Illinois constitution of 1970, entitled "The Powers of the State", in section 2 thereof, states: "The enumeration in this Constitution of specified powers and functions shall not be construed as a limitation of powers of state government."

The plaintiff also contends that the amended Ethics Act is invalid in that it contains more than one subject. We do not agree. In imposing the constitutional requirement of singleness of subject, courts have adopted a liberal construction so that the beneficial purposes to which a statute is directed will not be defeated. The "term 'subject' is comprehensive in its scope and *** an act may include all matters germane to its general subject, including the means necessary or appropriate to the accomplishment of the legislative purpose." (*People ex rel. Brenza v. Gebbie (1955), 5 Ill.2d 565, 587;* also see: *People ex rel. Gutknecht v. City of Chicago (1953), 414 Ill. 600, 607-608.*) We believe that the scope and subject covered by the Ethics Act relate to ethical standards and to the disclosure of economic interests which could conflict with the duties of governmental officers and employees, and

that portions of the Ethics Act do not contain discordant provisions having no legitimate relation to other of its parts.

Among the reasons stated by the trial court for finding the Ethics Act unconstitutional was the fact that it provided a sanction for its violation, and thereby purported to specify a penalty in addition to that provided by the constitution, which is ineligibility for, or forfeiture of office. But the penalty which the Ethics Act provides is for wilfully filing a false or incomplete statement. This conduct is entirely different from the failure to file. We find this contention to be without merit.

It is also urged that the Ethics Act violates section 2 of article XIII of the 1970 constitution in that it excludes from disclosure the assets and income most likely to produce conflicts of interest, *i.e.* campaign receipts.

The present statute does not require the disclosure of campaign contributions, and that omission was one of the grounds upon which the trial court held the statute invalid. Campaign contributions may be important factors bearing upon the conduct of a legislator or other elected officer. This omission does not, however, in our opinion, destroy the generality of the statute. (See 1970 Const., art. IV, sec. 13.) The debates of the constitutional convention make it clear that campaign contributions were not considered to be economic interests so far as disclosure under section 2 of article XIII is concerned.

The trial court further based its judgment of the unconstitutionality of the Ethics Act on the theory that it is an *ex post facto* law in that officials who were elected prior to July 1, 1972, are subject to requirements which did not exist when they were elected to office. The Illinois constitution of 1970 became effective July 1, 1971. The Ethics Act, as amended, became effective January 24, 1972. The verified statement of economic interests required to be filed must reflect such interests as of July 1, 1972. In the case at bar, any candidate or office holder on

or before July 1, 1972, must file a verified statement of economic interests as of that date. The Act fixes a penalty for filing a false or incomplete statement. However, this does not render the Ethics Act an *ex post facto* law as to those who were candidates for, or elected to, office prior to July 1, 1972. The filing requirement of the Ethics Act does not apply retroactively.

In *Calder v. Bull (1798) 3 U.S. (3 Dallas) 386, ex post facto* was defined as limited to legislation which (1) makes criminal and punishable an act innocent when done; (2) aggravates a crime, or makes it greater than it was when committed; (3) increases the punishment for a crime and applies the increase to crimes committed before the enactment of the law; and (4) alters legal rules of evidence so that testimony insufficient to convict of the offense when committed would be sufficient as to that particular offense and the accused person. This principle applies only to criminal laws. (*Jewell v. Carpentier (1961), 22 Ill.2d 445, 450-451.*) For all these reasons we find no merit in the *ex post facto* contention.

The further contention of unconstitutionality of the Ethics Act is asserted in that it delegates to the Secretary of State the power to render advisory opinions on questions concerning the interpretation of article 4A of the Act and authorizes him to hire private attorneys to assist in so doing. Supp. to Ill.Rev.Stat. 1971, ch. 127, par. 604A—106.

Article V of the constitution specifies the officers of the executive branch of the government and, among other things, outlines the duties of the Attorney General and Secretary of State as follows:

"Section 15. Attorney General—Duties.

The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law.

Section 16. Secretary of State—Duties.

The Secretary of State shall maintain the official records

of the acts of the General Assembly and such official records of the Executive Branch as provided by law. Such official records shall be available for inspection by the public. He shall keep the Great Seal of the State of Illinois and perform other duties that may be prescribed by law."

Section 4A—106 of the Ethics Act purports to authorize the Secretary of State to render advisory opinions in these words:

"The statements of economic interests required of persons listed in items (a) through (f) of Section 4A—101 shall be filed with the Secretary of State. \*\*\*

Upon the request of any person subject to this Act, the Secretary of State shall render an advisory opinion in writing, certified by him, on questions concerning the interpretation of Article 4A of this Act. The Secretary of State may employ such employees, consultants, and legal counsel as he considers necessary to carry out his duties hereunder, and may prescribe their duties, fix their compensation, and provide for reimbursement of their expenses."

In *Fergus v. Russell (1915), 270 Ill. 304,* a legislative enactment purported to transfer to the Insurance Superintendent the powers the duties of the Attorney General as conferred and imposed upon him by another enactment relating to insurance. It was held to be valid only insofar as such additional powers and duties of the Attorney General were not inherent in his office under the constitution. At page 342 the court stated: "By our constitution we created this office by the common law designation of Attorney General and thus impressed it with all its common law powers and duties. As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may provide otherwise. With this exception, only, he is the sole official adviser of the executive officers and of all boards, commissions and departments of the State govern-

ment, and it is his duty to conduct the law business of the State, both in and out of the courts. The appropriation to the Insurance Superintendent for legal services and for traveling expenses of attorneys and court costs in procecutions for violations of insurance laws is unconstitutional and void."

This decision has been criticized but has not been overruled and has been cited with approval in *Department of Health v. Cody (1967), 38 Ill.2d 602, 606; People ex rel. Barrett v. Finnegan (1941), 378 Ill. 387, 393,* and *North Chicago Hebrew Congregation v. Board of Appeals (1934), 358 Ill. 549, 567.*

In *People v. Toll Highway Com. (1954), 3 Ill.2d 218, 236,* this court held that the provision of the Toll Highway Act which authorized the commission to employ counsel was not invalid in that such appointments would be subject to the control, direction and supervision of the Attorney General and the appointees would serve only at his pleasure. Even though this decision marked a deviation from the rigidity of prior decisions on this issue, *Fergus v. Russell* was cited as authority for this holding.

The proceedings of the Constitutional Convention of 1970 seem to indicate a clear intent to preserve the policy of *Fergus v. Russell* in this respect. In Braden & Cohn, The Illinois Constitution: An Annotated and Comparative Analysis (1969), it was pointed out that the result in that case was based on an interpretation of section 1 of article V of the constitution of 1870, which provided that the Attorney General "shall perform such duties as may be prescribed by law." It was suggested that the way to change the rule of *Fergus v. Russell* was to rephrase the provision (Braden & Cohn, p. 260). No change was made by the Convention, however, and the present constitution contains the identical language that was before the court in *Fergus v. Russell.*

The words "and perform other duties that may be prescribed by law," which are found in section 16 of

article V of the constitution of 1970 and pertain to the duties of the Secretary of State, are not broad enough to overturn the provisions of section 15 and the time-honored decisions pertaining to the duties of the Attorney General.

We conclude that the statute in question is constitutional except insofar as it purports to authorize the Secretary of State to render advisory opinions, in writing, certified by him, on questions concerning the interpretation of article 4A of the Ethics Act and to hire legal counsel for such purposes, as set forth in section 4A—106 (Supp. to Ill.Rev.Stat. 1971, ch. 127, par. 604A—106) and that such provisions are unconstitutional.

This, however, does not render the Ethics Act unconstitutional since such provisions are severable and section 8—101 (Supp. to Ill.Rev.Stat. 1971, ch. 127, par. 608—101) states that if any provision or application of the Act to any person is held invalid, such invalidity does not affect the other provisions of the Act which can be given effect without the invalid provision or application.

Because of the nature of this case and its presentation solely on legal issues, no purpose is to be served by remandment. Accordingly, the judgment of the circuit court is reversed and the Ethics Act is held to be constitutional except as otherwise indicated herein, and the permanent injunction issued by said court is hereby dissolved. Ill.Rev.Stat. 1971, ch. 110A, par. 366(a)(5).

*Judgment reversed.*