Appellants, Donald Comer, III, George E. Bagley, Alto V. Lee, III, Leslie S. Wright and Melvin G. Cooper, appeal a final order and decree by Circuit Judge Perry O. Hooper which held Act No. 130 of the 1975 session of the Alabama Legislature unconstitutional in its entirety as well as holding that the incumbent Ethics Commissioners (appellants) are holding office illegally, having not been appointed under Act No. 130. We affirm in part and reverse in part.
 THE HISTORY
Act No. 1056 of the 1973 session of the Alabama Legislature, the Alabama Ethics Law, was enacted by the Legislature on September 13, 1973 and was signed into law by the Governor on the following day. As originally enacted, Act No. 1056 applied only to state officials and employees. It delegated to the State Ethics Commission the authority to adopt rules of ethical conduct for county and municipal officials and employees similar to the requirements the state law imposed upon state officials and employees.
In order to facilitate the understanding of this case, we include the pertinent sections of Act No. 1056, which follow:
 "To establish a state ethics commission and to provide a state ethics law, which: requires disclosures of certain economic interests and certain family connections to be filed by state officials and certain state employees and by persons having certain business dealings with the state or its agencies or instrumentalities, proscribes certain practices by state officials and employees which conflict with the proper safeguarding of the public trust; requires the registration of persons engaged in activities designed to influence legislation and the making of certain reports by such persons and otherwise regulates such activities of such persons; prescribes penalties; provides for the enforcement of this act; prescribes the powers and duties of the ethics commission; and authorizes the commission to prescribe, promulgate and enforce rules, consonant with this law, to govern activities and disclosures by county and municipal officials needed to safeguard the public trust in such governmental units.
Be It Enacted by the Legislature of Alabama:
Section 1.
 (a) It is essential to the proper operation of democratic government that public officials be independent and impartial; that governmental decisions and policy be made in the proper channels of the governmental structure; that public office not be used for private gain other than the renumeration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired whenever there exists a conflict between the private interests of an elected official or a government employee and his duties as such. The public interest, *Page 744 
therefore, requires that the law protect against such conflicts of interest and establish appropriate ethical standards with respect to the conduct of elected officials and government employees in situations where conflicts exist.
 (b) It is also essential to the proper operation of government that those best qualified be encouraged to serve the government. Accordingly, legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it. An essential principle underlying the staffing of our government structure is that its elected officials and employees should not be denied the opportunity, available to all other citizens, to acquire and retain private economic and other interests, except where conflicts with the responsibility of such elected officials and employees to the public cannot be avoided.
 (c) Also, the legislature hereby declares that the operation of responsible democratic government requires that the fullest opportunity be afforded to the people to petition their government for the redress of grievances and to express freely to individual member of the legislature, to committees of the legislature, and to officials of the Executive branch, their opinions on legislation, on pending executive actions, and on current issues; and that, to preserve and maintain the integrity of the legislative and administrative processes, it is necessary that the identity, expenditures and activities of certain persons who engage in efforts to persuade members of the legislature or the executive branch to take specific actions, either by direct communication to such officials, or by solicitation of others to engage in such efforts, be publicly and regularly disclosed. The provisions of this act shall be liberally construed to promote complete disclosure of all such information and so as to assure that the public interest will be fully protected.
 (d) It is the policy and purpose of this Act to implement these objectives of protecting the integrity of the government of this state and of facilitating the recruitment and retention of qualified personnel by prescribing essential restrictions against conflicts of interest in state government without creating unnecessary barriers to public service.
 Section 2. Whenever used in this Act, the following words and terms shall have the following respective meaning unless the context clearly indicates otherwise:
. . . . .
 (k) "State Official" means any elected official of the legislative, judicial or executive branch of state government, and any person appointed under Alabama Law to an office in either branch where, in the conduct of such office, administrative and discretionary powers attend the appointment. Also, this definition shall mean an appointed member of any commission or committee which has administrative or policy-making control of any governmental function, but shall not mean members of commissions or committees functioning solely for advisory or research purposes.
. . . . .
Section 17.
 (a) There is hereby created a State Ethics Commission which shall be composed of five members, each of whom shall be a fair, equitable citizen of this state and of high moral character. No member of the commission shall be eligible for appointment to succeed himself, except that members appointed to the first commission may each be appointed one time to succeed himself. One member of such commission shall be appointed by each of the following officers: the Governor, the Lieutenant-Governor, the Speaker of the House of Representatives, the Chief Justice of the Supreme Court, and the Attorney General. The members of the first commission shall be appointed for terms of office expiring one, two, three, four and five years, respectively, from the date on which this act becomes *Page 745 
law, the member being appointed by the Governor having the one-year term, the member appointed by the Lieutenant-Governor having the two-year term, the member appointed by the Speaker of the House having the three-year term, the member appointed by the Chief Justice having the four-year term, the member appointed by the Attorney General having the five-year term. Successors to the members of this first commission shall each be appointed for terms of five years and until their successors are appointed and have qualified. If any of the above listed appointing authorities should fail to make his appointment to the first commission within forty-five days after this act becomes law or to fill a vacancy forty-five days after such vacancy occurs, then the Governor may make such appointment; but the term of such appointee shall be for the period prescribed for a member appointed by the officer authorized to make such appointment but who failed to do so. If at any time there should be a vacancy on the commission, a successor member to serve for the unexpired term applicable to such vacancy shall be appointed by the same appointing authority as the member whose unexpired term such successor is to fill. The commission shall elect one member to serve as chairman of the commission and one member to serve as vice chairman. The vice chairman shall act as chairman in the absence or disability of the chairman or in the event of a vacancy in that office.
 As soon as all the members of the board have been appointed the Governor shall call and provide for the holding of an organizational meeting of the commission. Such meeting shall be set for not less than forty-five days nor more than sixty days after this act becomes effective.
Appellants were appointed to their positions on the Commission as provided by Act No. 1056. Subsequently, the Commission prescribed financial disclosure forms to be filed periodically by persons covered by Act No. 1056 and adopted rules of ethical conduct for county and municipal officials and employees.
The Legislature considered revision of the Ethics Law in the spring of 1975. House Bill 240, introduced on May 6, 1975, was altered by the Senate to become Act No. 130 of the 1975 session of the Legislature — an amendatory Act relating to and re-enacting Act No. 1056. Pertinent parts of Act No. 130 follow:
 To amend and re-enact Act. No. 1056, S. 1, Regular Session 1973 (Acts 1973, pg. 1699); entitled, An Act to establish a state ethics commission and to provide a state ethics law, which: requires disclosures of certain economic interests and certain family connections to be filed by state officials and certain state employees and by persons having certain business dealings with the state or its agencies or instrumentalities, proscribes certain practices by state officials and employees which conflict with the proper safeguarding of the public trust; requires the registration of persons engaged in activities designed to influence legislation and the making of certain reports by such persons and otherwise regulates such activities of such persons; prescribes penalties; provides for the enforcement of this Act; prescribes the powers and duties of the ethics commission; and authorizes the commission to prescribe, promulgate and enforce rules, consonant with this law, to govern activities and disclosures by county and municipal officials needed to safeguard the public trust in such governmental units, so as to amend the title and certain sections; to eliminate section 14; and to renumber certain sections.
Be It Enacted by the Legislature of Alabama:
 Section 1. Act No. 1056, S. 1, Regular Session 1973 (Acts 1973, pg. 1699) is hereby amended and re-enacted to read as follows:
"AN ACT
 "To establish a state ethics commission and to provide a state ethics law, which: *Page 746 
Requires disclosures of certain economic interests and certain family connections to be filed by candidates for public offices, public officials and employees, and by persons having certain business dealings with the state, a county or municipality or its agencies or instrumentalities; proscribes certain practices by public officials and employees which conflict with the proper safeguarding of the public trust; requires the registration of persons engaged in activities designed to influence legislation and the making of certain reports by such persons and otherwise regulates such activities of such persons; prescribes penalties; provides for the enforcement of this act; prescribes the powers and duties of the ethics commission; and authorizes the commission to prescribe, promulgate and enforce rules, consonant with this law, to govern activities and disclosures by public officials and employees needed to safeguard the public trust in such governmental units.
"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
"SECTION 1.
 "(a) It is essential to the proper operation of democratic government that public officials be independent and impartial; that governmental decisions and policy be made in the proper channels of the governmental structure; that public office not be used for private gain other than the renumeration provided by law; and that there by public confidence in the integrity of government. The attainment of one or more of these ends is impaired whenever there exists a conflict between the private interests of an elected official or a government employee and his duties as such. The public interests, herefore, requires that the law protect against such conflicts of interest and establish appropriate ethical standards with respect to the conduct of elected officials and government employees in situations where conflicts exist.
 "(b) It is also essential to the proper operation of government that those best qualified be encouraged to serve the government. Accordingly, legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it. An essential principle underlying the staffing of our government structure is that its elected officials and employees should not be denied the opportunity, available to all other citizens, to acquire and retain private economic and other interests, except where conflicts with the responsibility of such elected officials and employees to the public cannot be avoided.
 "(c) Also, the legislature hereby declares that the operation of responsible democratic government requires that the fullest opportunity be afforded to the people to petition their government for the redress of grievances and to express freely to individual members of the legislature, to committees of the legislature, and to officials of the executive branch, their opinions on legislation, on pending executive actions and on current issues; and that, to preserve and maintain the integrity of the legislative and administrative processes, it is necessary that the identity, expenditures and activities of certain persons who engage in efforts to persuade members of the legislature or the executive branch to take specific actions, either by direct communication to such officials, or by solicitation of others to engage in such efforts, be publicly and regularly disclosed. The provisions of this Act shall be liberally construed to promote complete disclosure of all such information and so as to assure that the public interest will be fully protected.
 "(d) It is the policy and purpose of this Act to implement these objectives of protecting the integrity of all governmental units of this state and of facilitating the recruitment and retention of qualified personnel by prescribing essential restrictions against conflicts of interest in state government without creating unnecessary barriers to the public service.
. . . . . *Page 747 
 "(i) `Public Employee' means any employee of state, county or municipal governments who has administrative and discretionary authority for the receipt or expenditures of public funds or who earns in excess of $15,000 annually but shall not include those persons who are primarily engaged in teaching duties in all schools, colleges, and universities in the State.
. . . . .
 "(k) `Public Official' means any elected official at the state, county, or municipal level of government and any person appointed under state, county, or municipal law to an office where in the conduct of such office such person has administrative and discretionary authority for the receipt or expenditure of public funds. This definition shall also include members of state boards, commissions, committees, councils and authorities however selected, Presidents, Vice-Presidents, Chief Purchasing Officials and Chief Financial Officials of all schools, colleges and universities of the State; members of city and county industrial boards, planning and zoning boards, schools boards, boards of adjustment, utility boards, housing boards, public hospital boards, and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto, in all cities whose population is more than 15,000 according to the last decennial census. This definition excludes members of all other boards not named including but not limited to those commissions, committees, councils, boards of authorities, functioning solely for cultural or historical purposes and advisory board members and members of boards of trustees of institutions of higher learning of the State of Alabama.
. . . . .
SECTION 16.
 "(a) There is hereby created a State Ethics Commission which shall be composed of five members, each of whom shall be a fair, equitable citizen of this state and of high moral character. No member of the commission shall be eligible for appointment to succeed himself. The members of such commission shall be appointed by the following officers: the Governor, the Lieutenant-Governor, and the Speaker of the House of Representatives and shall assume their duties upon confirmation by the Senate. The members of the first commission shall be appointed for terms of office expiring one, two, three, four and five years, respectively, from September 1, 1975. Successors to the members of this first commission shall each be appointed for terms of five years and until their successors are appointed and have qualified. If at any time there should be a vacancy on the commission, a successor member to serve for the unexpired term applicable to such vacancy shall be appointed by the Governor. The commission shall elect one member to serve as chairman of the commission and one member to serve as vice chairman. The vice chairman shall act as chairman in the absence or disability of the chairman or in the event of a vacancy in that office. As soon as all the members of the board have been appointed the Governor shall call and provide for the holding of an organizational meeting of the commission.
 "(b) A vacancy in the commission shall not impair the right of the remaining members to exercise all the powers of the commission and three members thereof shall constitute a quorum.
 "(c) The commission shall at the close of each fiscal year report to the legislature and the Governor concerning the action it has taken; the names, salaries, and duties of all individuals in its employ and the monies it has disbursed; and shall make such further reports on the matters within its jurisdiction and such recommendations for further legislation as may appear desirable.
 "(d) Members of the Commission shall, while serving on the business of the commission, be entitled to receive compensation at the rate of $50 per day, and each such member shall be paid the actual and necessary expenses incurred in the performance *Page 748 
of his duties as a member of the commission when approved by the chairman thereof.
 "(e) All members, officers, agents, attorneys, and employees of the commission shall be subject to the provisions of this Act and also to the provisions of law prohibiting political activities by state employees.
 "(f) The commission shall appoint an Executive Director and such other staff as is needed. All such appointees shall serve at the pleasure of the commission. All such employees, except for the Executive Director, shall be employed subject to the provisions of the state merit system law, and their compensation shall be prescribed pursuant to such law. The compensation of the Executive Director shall be fixed by the Commission, but shall not exceed $25,000 per year. The Executive Director shall be responsible for the administrative operations of the commission and shall perform such other duties as may be delegated or assigned to him from time to time by regulation or order of the commission. However, the commission shall not delegate the making of regulations to the Executive Director. The commission may require the Executive Director to draft regulations but no regulation shall be implemented by the Executive Director until adopted by the commission members.
 "(g) The commission is hereby authorized, when in its discretion the ends of justice will be thereby served, to waive any rule or regulation presented relative to any disclosure statement, provided such waiver is done in writing stating the reason why and made a part of the public record.
 "(h) No person heretofore appointed to the Ethics Commission pursuant to Act No. 1056, S-1, Regular Session of 1973 shall be eligible for appointment or membership of the commission after the effective date of this act.
. . . . .
 "SECTION 30. The provisions of this Act are severable. If any part thereof is declared unconstitutional, such declaration shall not affect the part which remains.
 "SECTION 31. This Act shall be construed in pari materia with other laws dealing with the subject matter hereof, and repeals all laws and parts of laws in conflict herewith.
As adopted, Act No. 130 amended Act No. 1056 to replace all references to "state officials and employees" with definitions of and references to "public officials and employees." It defined public officials and employees to include state, county and municipal officials and employees. It included guidelines for lobbyists and provided criminal sanctions for violation. Act No. 130 also amended Act No. 1056 to correct a title deficiency. Additionally, Act No. 130 amended Act No. 1056 to provide in § 16 (h) that incumbent members of the State Ethics Commission were removed from office and could never again serve on the Commission. In § 16 (a) it provided for a subsequent method of appointment for Commission members.
Following an opinion of the Attorney General that the Legislature could not constitutionally remove incumbents from office, nor prohibit them from serving again, Steve Suitts initiated a quo warranto proceeding in February, 1976, challenging the authority of the incumbent members of the State Ethics Commission to continue to serve as members of the Commission. The Commissioners and the State of Alabama countered by asking for dismissal of the petition on the grounds that:
 ". . . the State of Alabama acknowledges and admits that respondents properly hold office as members of the Alabama State Ethics Commission, that the Relator Steve Suitts does not have standing to maintain this action, that removal of these Respondents from office would be contrary to the public interest and that the provisions of law upon which the Relator relies as having removed Respondents from office and prohibiting Respondents from holding office are *Page 749 
unconstitutional, illegal and ineffective; . . . ."
A different trial court, noting that the motion should be granted for each reason urged, decreed that the petition for a writ of quo warranto was dismissed with prejudice and the relief denied. That judge's decision has been appealed; it is now before this Court. State ex rel. Suitts v. Comer, Ala.,337 So.2d 753.
 THE FACTS
The complaint in this action was filed February 27, 1976 by the City of Mobile, the Industrial Development Board of the City of Mobile and Mr. Oliver H. Delchamps, Jr., in their own behalf and "as representatives of all other county and municipal officers and employees, and all other members of the governing bodies, officers and employees of all municipal and county boards, agencies, authorities, commissions, committees, councils and authorities . . . in all cities whose population is more than 15,000 . . ." They asked that Act No. 130 of the 1975 session of the Legislature and certain sections thereof be held unconstitutional and the incumbent members of the State Ethics Commission be removed from office. A temporary restraining order, granted ex parte by the trial judge, was served on the defendant-appellants, restraining them from applying Act No. 130 to any county or municipal official or employee. Later, after ruling that the case could be maintained as a class action, the trial judge granted a preliminary injunction and the case was set down for trial on the merits on March 29, 1976.
A final order was entered in the case on April 30, 1976 holding Act No. 130 unconstitutional in its entirety, holding certain sections of the Act unconstitutional and holding that the incumbent Ethics Commissioners were holding office illegally because they had not been appointed under Act No. 130. This appeal followed.
We sustain the lower court's decree insofar as it renders § 16 (h) and a portion of § 2 (k) of Act No. 130 unconstitutional. However, we also hold that the incumbent Ethics Commissioners are legally authorized to retain their positions until the new Commissioners are appointed and confirmed as provided under § 16 (a) of Act No. 130.
 THE ISSUES
Although it is not entirely clear either from the trial judge's order or from the briefs of the parties precisely what issues are raised on this appeal, we believe the following state the legal questions raised;
1. Whether Act No. 130 is so vague and overbroad as to violate the due process clause of the United States Constitution.
2. Whether the removal of a certain class of persons holding office prior to the effective date of the Act violates Section 175 of the Alabama Constitution of 1901, Art. I, Section 10, of the United States Constitution, or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
3. Whether § 2 (k) of Act No. 130 is a local Act which violates Sections 104, 110 and 111 of the Alabama Constitution of 1901.
4. Whether Act No. 130 was so altered or amended on its passage through the 1975 legislative session as to change its original purpose in violation of Section 61 of the Alabama Constitution of 1901.
5. What does Rule 65 (b) ARCP require with respect to the decision of the trial judge to grant a temporary restraining order without notice to the adverse party?
 THE OPINION
1. In his "Corrected Judgment and Decree," the trial judge held Act No. 130 overbroad because:
 ". . . The arms of the Ethics Commission have been stretched into areas never contemplated by Act No. 130, but because of the vagueness of the statute, the Ethics Commission has undertaken to exercise authority over citizens which it has never had the right to exercise authority . . ." *Page 750 
This appears not a criticism of the Act itself but of the application of the Act by the Ethics Commission, for the decree goes on to condemn the requirement by that body of financial disclosure by the Alabama State Nurses Association whose members are part of the class on whose behalf the action was brought. The trial court found that those nurses are not "public officials or employees" within the meaning of those terms as used in the Act.
If "overbroad" were taken to mean, therefore, that the Legislature did not include this Association in its definition of "public official," the trial judge was correct, for § 2 (k) includes "any elected official . . . and any person appointed under state, county, or municipal law to an office where . . . such person has . . . authority for the receipt or expenditure of public funds . . . and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto. . . ." The Alabama State Nurses Association, having been found by the trial court not to be such public officials, does not fall within the ambit, and the Ethics Commission had no statutory authority to impose the Act's provisions upon its membership. Such a lack of authority, however, does not establish that the definition of those to whom the Act was to apply was vague. Those persons and organizations to whom the definition applies are readily identifiable. That a statute might be susceptible of misapplication does not necessarily result in its unconstitutionality. Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (1972).
After careful consideration of the foundation of the trial court's decree and our own consideration of the merits of this challenge, we find that the Act itself is not vague or overbroad. Although its application by the Ethics Commission with regard to nurses, discussed heretofore, may be far-reaching, this is not a fault of the statute. If there is overbreadth, it is the result of the Ethics Commission's overreaching.
2. In paragraph (p) of his decree, the trial judge held that certain provisions of Act No. 130 operated as a bill of attainder and thus violated Art. I, Section 10 of the Federal Constitution. He referred to an earlier opinion of the Attorney General of Alabama which viewed §§ 16 (a) and 16 (h) as bills of attainder. The appellants urge that view upon us here, and argue as well that these sections violate the Equal Protection Clause of the Constitution. Prohibiting any member of the Ethics Commission appointed under Act No. 1056 from again becoming such a member under Act No. 130, § 16 (h) clearly violates the Equal Protection Clause, for while that clause does not prohibit a state from treating different classes of people in different ways, the classification must be a reasonable one, having a substantial relation to the object of the legislation, and not constituting an arbitrary distinction. See Montgomery County v. Walsh, 274 Md. 502, 336 A.2d 97
(1975). We can discern no reasonable relationship between this membership prohibition and the purpose of this legislation as expressed in § 1. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251,30 L.Ed.2d 225 (1971). Setting out this particular class of persons for the special treatment of utter disqualification tends to effect their disapprobation, but without any relationship to the broad principles of proper democratic government espoused in this Ethics bill. Clearly, by this prohibition public officials are not rendered independent, government decisions are not more properly channeled, public office is not less used for private gain, public confidence in governmental integrity is not increased, conflicts of interest are not thereby reduced, nor are the best qualified encouraged to serve the government, as the Act provides.
Having found § 16 (h) offensive to the constitutional mandate of equal protection, we find it is unnecessary to consider the question of its attaintive character.
The invalidity of § 16 (h) does not necessarily render the appointive section, § 16 (a), invalid. Indeed, the Legislature has included within the terms of Act No. 130 a severability clause, § 30. Such a clause is persuasive authority that the Legislature *Page 751 
intended the valid portion to survive. Mitchell v. MobileCounty, 294 Ala. 130, 313 So.2d 172 (1975). As stated in 82 C.J.S. Statutes § 93, pages 155, 156:
 ". . . A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, if the statute is still capable of fulfilling the apparent legislative intent, or if the remaining portions are sufficient to accomplish the legislative purpose deducible from the entire act, construed in the light of contemporary events.
. . . . .
 [t]he invalidity of a part of a statute does not render the remainder invalid where enough remains, after discarding the valid part, to show the legislative intent and to furnish sufficient means to effectuate that intent. . . ."
This view finds support in our law. Hamilton v. AutaugaCounty, 289 Ala. 419, 268 So.2d 30 (1972). It seems obvious that by enacting Act No. 130 as an amendatory act, the Legislature wished to terminate the offices of Ethics Commissioners created by Act No. 1056 and create new offices with a different method of selection. Such action was within the Legislature's power, for it may abolish any office it creates without infringing upon the rights of the officer affected. Heck v. Hall, 238 Ala. 274, 190 So. 280 (1939); Hardv. State, 228 Ala. 517, 154 So. 77 (1934). This is precisely what was accomplished by the enactment of § 16 (a) of Act No. 130 which superseded § 17 of Act No. 1056. Under § 16 (a), initially-appointed members cannot succeed themselves as under § 17. Other changes concern the method of appointment and the date on which their terms of office begin. There is nothing within the provisions of Act No. 130 which suggests that the Legislature would not have enacted § 16 (a) without § 16 (h); we may presume that having created the five-member Commission, the Legislature acted reasonably by providing for its selection. Certainly, § 16 (a) may be given effect without dependence upon § 16 (h), since, as we have shown, they are independent of one another. Hamilton v. Autauga County, supra.
Having had their offices legally abolished by the enactment of Act No. 130 the incumbent Ethics Commissioners became defacto officers because they had possession of public offices and were exercising the function of those offices. Alabama Code, Tit. 41, § 2 (Recomp. 1958) declares that:
 "The official acts of any person in possession of a public office, and exercising the functions thereof, shall be valid and binding as official acts, in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold office or not, and whether such person be lawfully qualified or not; but such person shall be liable to all penalties imposed by law for usurping or unlawfully holding office, or for exercising the functions thereof without lawful right, or without being qualified according to law."
Because of the invalidity of § 16 (h), the de facto
Commissioners may be considered with other "fair, equitable citizen[s] . . of high moral character" for appointment to the new Commission under § 16 (a) whose appointments were authorized to be made from September 1, 1975. Until these appointments are made, they continue as de facto officers under their original appointments.
3. Plaintiffs below challenged the constitutionality of § 2 (k) of Act No. 130 because the section is based on a population classification which they contend has no reasonable relationship to the purpose of Act No. 130. Because of that deficiency, they contend, the entire Act is unconstitutional as a local Act violating Sections 106, 110 and 111 of the Alabama Constitution of 1901.
Often this Court has declared acts passed as general acts to be local in nature, and thus unconstitutional when the act rested upon a single minimum population dividing *Page 752 
line classification such as the 15,000 population mark at bar.City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869 (1964);Nelson v. State, 255 Ala. 141, 50 So.2d 401 (1951); McDowell v.Columbia Pictures Corp., 281 Ala. 438, 203 So.2d 454 (1967). The decisions stemmed from conclusions by this Court that the purposes of the acts involved were not reasonably related to the differences in population created by the dividing lines of minimum population. Couch v. Rodgers, 253 Ala. 533,45 So.2d 699 (1950) citing Reynolds v. Collier, 204 Ala. 38, 85 So. 465
(1919). In City of Birmingham v. Moore, supra, an act was passed to provide clearance and renewal housing projects for cities with a population of over 300,000. The trial court had held the act invalid as repugnant to § 106 of the Alabama Constitution of 1901. In considering the constitutionality of the Act, we consulted §§ 106, 110 and 111 of the Constitution of Alabama 1901. Section 106 provides basically that "no local, special, or private law shall be passed on any subject without giving the notice as there prescribed, and makes it the mandatory duty of the courts to declare the same void if the journals do not affirmatively show that it was passed in accordance with the provisions of the section." City ofBirmingham v. Moore, supra, 248 Ala. at page 423, 27 So.2d at page 870. Section 110 was consulted because it contains the legislative definition of general and local laws; Section 111 deals with prohibition of amendments which would change the nature of a general law such that it would become a special, private or local law.
In rendering the Act unconstitutional this Court noted the following in Moore, supra, at pages 423, 424, 27 So.2d at page 870:
 "However, the conditions justifying such classification are equally well established by our cases. The difference in population must be substantial, and the classification must be made in good faith and must be reasonably related to the purpose to be effected by the act. If these conditions exist, the fact that at the time the law may be applicable to only one political subdivision of the State will not suffice for its condemnation. On the other hand, if the classification is not in good faith, bears no reasonable relation to the difference in population upon which it rests in view of the purpose to be effected by such legislation, and was arbitrarily fixed, the law will be condemned as local, and as having been passed merely under the guise of a general law in violation of the Constitution. (Citations omitted.)"
It is our determination that a portion of § 2 (k) provides no rational relationship to the purpose of Act No. 130, and therefore, cannot be upheld as a general law. (It cannot be maintained as a local law because of noncompliance with the notice sections, Art. 6, Section 106, Alabama Constitution of 1901.) As Justice Lawson said in Moore, supra:
 "The act before us cannot survive the test, heretofore stated, . . . Judicial ingenuity would exhaust itself in the effort to find any rational basis for the classification it presents. . . ."
The purpose of Act No. 130 is summarized in its § 1 (d): ". . . to implement these objectives of protecting the integrity ofall governmental units of this state. . . ." (Emphasis supplied.) Yet, rather than applying the Commission's formula of financial disclosure to all employees in the state, county and municipal governmental units, the Legislature, in part of § 2 (k) defined some of the "Public officials and employees" to which disclosure applied as the following:
 ". . . members of city and county industrial boards, planning and zoning boards, school boards, boards of adjustment, utility boards, housing boards, public hospital boards, and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto, in all cities whose population is more than 15,000 according to the last decennial census. . . ."
Since we can find no reasonable relationship between boards in cities with a population of over 15,000, as opposed to cities *Page 753 
which do not reach the minimum population mark, with regard to the integrity of board members, we must conclude that the classification in the quoted portion of § 2 (k) is an arbitrary and capricious one, and thus unconstitutional. Accordingly, we hold that this portion of § 2 (k) is unenforceable.
Without this invalid portion, the remainder of the public official definition in § 2 (k) not only is without unreasonable classification but well within the purposes of the Act. What we have stated in reference to the severability of § 16 (a) applies with equal force to the viability of the remainder of § 2 (k). Separate amendatory provisions and exceptions have been upheld even when unconstitutional provisions which they contain were stricken from them. Jardine v. Superior Court, 213 Cal. 301, 2 P.2d 756 (1931); 16 Am.Jur.2d, § 184. Accordingly, the remaining definition of "public official" in § 2 (k) of Act No. 130 remains in effect.
4. The fourth issue raised is whether Act No. 130 was so altered or amended during its passage as to change its original purpose in violation of Section 61, Alabama Constitution of 1901. It was not so changed in our judgment. The purpose of House Bill 240 was simply to pass a bill which could be titled "Ethics Legislation." By amendment or substitution, the Senate enlarged that legislation. The result was Act No. 130. Such change or substitution did not affect the purpose of the bill.State v. Buckley, 54 Ala. 599 (1875); Harrison v. Gordy,57 Ala. 49 (1876); Hall v. Steele, 82 Ala. 562, 2 So. 650 (1886).
As a general rule of statutory interpretation, Section 61 is deemed complied with unless the contrary is shown with certainty. State v. Buckley, supra; Rogers v. Garlington,234 Ala. 13, 173 So. 372 (1937); Ex parte Rice, 265 Ala. 454,92 So.2d 16 (1957). After careful examination of the bills themselves, the briefs, and after oral argument we feel that Section 61 was complied with. The purpose of Act No. 130 was not so altered as to bring the taint of unconstitutionality to all of its sections not heretofore stricken.
5. The final issue concerns the decision of the trial judge granting a temporary restraining order without notice to the opposing parties. Rule 65 (b), ARCP, authorizes such action in some instances. We can ascertain no damage accruing to the adverse parties as a result of the trial court's action in this case, nor was damage claimed in argument or brief.
In our review of this case we have addressed ourselves only to the constitutional issues raised.
AFFIRMED IN PART; REVERSED IN PART.
All the Justices concur.