LISA SMALL *et al.*, Plaintiffs-Appellants, v. STANLEY T. KUSPER, JR., Clerk of Cook County, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 87—0587

Opinion filed September 14, 1987.

Mathias W. Delort and Keck, Mahin & Cate, both of Chicago (Donald J. McNeil, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellee State Board of Elections.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Myra S. Brown, and Gareth C. Leviton, Assistant State's Attorneys, of counsel), for appellee Stanley Kusper.

Michael Levinson, of Chicago, for appellee Board of Election Commissioners of the City of Chicago.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs, voters in the March 1986 primary election in Chicago, appeal from the dismissal of their complaint which sought to have various provisions of the Illinois Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 1—1 et seq.) declared unconstitutional and to have defendants, local and State election officials, enjoined from enforcing those provisions. Plaintiffs alleged that the challenged provisions violated their right to privacy guaranteed by article I, section 6, of the 1970 Illinois Constitution.

The statutes in question require that each primary voter disclose his party affiliation (Ill. Rev. Stat. 1985, ch. 46, pars. 5—30, 6—67, 7—43); that one of the election judges "announce the same in a distinct tone of voice, sufficiently loud to be heard by all persons in the polling place" (Ill. Rev. Stat. 1985, ch. 46, par. 7—44); and that local election authorities code the list of registered voters in each precinct to indicate the primary ballot selected by registrants and deliver copies of these coded lists to the chairman of each established political party within 60 days following the election. Ill. Rev. Stat. 1985, ch. 46, pars. 5—29, 6—66.

The trial court, after finding no precedent or support for plaintiffs' position, concluded that the right to privacy under section 6 does not encompass party affiliation, and therefore dismissed plaintiffs' complaint and granted defendants' motion for summary judgment. For the reasons outlined below, we affirm.

Article I, section 6, of the 1970 Illinois Constitution is entitled "Searches, Seizures, Privacy and Interceptions" and provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasona-

ble searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. 1, sec. 6.

The courts of this State have not yet defined with certainty what privacy protections are afforded persons under this section. In *Stein v. Howlett* (1972), 52 Ill. 2d 570, 574, 289 N.E.2d 409, 411, the court observed, "No limiting definition of the type of privacy is stated in the constitution." (See also Ill. Ann. Stat. 1970 Const., art. I, sec. 6, Constitutional Commentary, p. 317 (Smith-Hurd 1971) (while recognizing that the protection against invasion of privacy was new and stated broadly, it also points out that no definition of the "types" of privacy was offered).) That observation was qualified, however, in *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 523, 315 N.E.2d 9, 15), where the court noted that the constitutional right to privacy merely gave individuals protection from eavesdropping devices or other means of interception. In a dissent, Justices Ryan and Goldenhersh reviewed the history of section 6, from the time that section was originally presented by the Bill of Rights Committee until the time it was enacted in final revised form, and concluded that it revealed an intent to create a substantive right of privacy independent of the constitutional protections from searches, eavesdropping or the use of highly intrusive information-gathering devices. (57 Ill. 2d 512, 531-34, 315 N.E.2d 9, 19-21.) In reaching this conclusion, the dissenting justices considered Bill of Rights Committee Delegate Dvorak's discussion of that section relevant. Dvorak, commenting on the right to privacy, stated:

" 'The cases that I have noted that deal with eavesdropping have pretty much intruded into the area of privacy because now the area of privacy that once was thought to be a complete area in and of itself mostly is the reason given for why eavesdropping, wire-tapping, and bugging activities are unconstitutional. *But there is the area of privacy still existing in very particular instances.* For instance, we have now the concept of a general information bank whereby the state government or the federal government can take certain pertinent information about each and everyone of us based on, for instance, our social security number—know our weight, height, family ages, various things about us—and this is not acceptable to—was not acceptable—or the theory or the thought of such a thing—was not acceptable to the majority of our committee in approving section 6.' (Emphasis added.) 3 Proceedings 1525." 57 Ill. 2d 512, 533, 315 N.E.2d 9, 20.

With these differing views of the scope of section 6 in mind, it is necessary to determine whether one's political affiliation is a privacy right secured in Illinois. While we agree with the dissenting justices in *Walker* and plaintiffs here that the privacy right extends beyond traditional fourth amendment protections, the history of section 6's enactment and subsequent supreme and appellate court decisions require that we reject its expansion in this case.

Excerpts from the proceedings of the Sixth Illinois Constitutional Convention indicate the delegates' intention to make no change in the requirement that voters disclose their party affiliation in a primary election. For example, during the report of the Suffrage and Constitution Amending Committee, one delegate, referring to open primaries, stated they were rejected because they were "not a matter for constitutional action." (II Proceedings of the Sixth Illinois Constitutional Convention, Verbatim Transcripts, at 978 (1970).) Likewise, in considering the concept of "Secrecy in Voting" pursuant to article VII, section 2, the Committee on Suffrage and Constitution Amending stated:

"By its change from the language of the 1870 Constitution, the Committee does not intend any change in the present law insofar as voters are required to declare their party affiliation in primary elections." (VII Proceedings of the Sixth Illinois Constitutional Convention, Committee Proposals, at 2347 (1970).)

Although the trial court found these excerpts to be unpersuasive with respect to the privacy issue, since the committee involved was construing sections other than article I, section 6, absent any contrary authority, they are the best indication of the intent of the constitutional convention in this matter. Clearly, if the delegates had contemplated that nondisclosure of party affiliation mandated constitutional protection, they could have raised that concern when section 6 was discussed shortly thereafter. See III Proceedings of the Sixth Illinois Constitutional Convention, Verbatim Transcripts, at 1523-44 (1970).

Moreover, Illinois courts, while not defining the exact limits of the constitutional right to privacy, have been reluctant to revoke it in circumstances akin to those in the present lawsuit. In *Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409, and *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 315 N.E.2d 9, the Illinois Supreme Court refused to broaden the right of privacy to cover public employees' mandatory disclosure of personal financial information. In *Oden v. Cahill* (1979), 79 Ill. App. 3d 768, 398 N.E.2d 1061, the appellate court refused to recognize an invasion of plaintiff's privacy when a city civil service commission examined plaintiff's arrest record that had been expunged by court order in connection with her applica-

tion for public employment. In upholding the trial court's order of dismissal for failure to state a cause of action, the court held that although defendant's conduct violated a circuit court order, it did not invade plaintiff's "zone of privacy." In *In re Roger B.* (1980), 85 Ill. App. 3d 1064, 407 N.E.2d 884, the court declined to expand the concept to enable petitioner to obtain information concerning his adoption. In rejecting his claim under article I, section 6, the court held that the guarantee of privacy "protects only those personal rights which are fundamental or implicit in the concept of ordered liberty." 85 Ill. App. 3d 1064, 1067, 407 N.E.2d 884, 887.

In fact, recently, the Illinois Supreme Court expressly cautioned against the unbridled expansion of the right to privacy. In *People v. Kohrig* (1986), 113 Ill. 2d 384, 498 N.E.2d 1158, the court addressed whether a mandatory seat belt law constituted an unconstitutional invasion upon one's right to privacy. In upholding the constitutionality of the statute, the court noted:

> "We are unwilling to graft onto the Constitution a right of privacy to decide whether or not to wear a safety belt where there is no [textual] basis or a clear historical precedent for such a right in the language of the Constitution or the opinions of the Supreme Court. To do so would be to place the Court in a position of acting as a super-legislature, nullifying laws it does not like. That is not our proper role in a democratic society. Therefore, we hold that the section does not infringe upon defendant's fundamental right of privacy protected by the fourteenth amendment. Neither does it infringe upon any right to privacy arising under the Illinois Constitution. [Citation.]" (113 Ill. 2d 384, 396, 498 N.E.2d 1158, 1162.)

Similarly, here, this court should not act as "super legislature" where "there is no [textual] basis or a clear historical precedent" for expanding the right to privacy to include party affiliation. Regardless of whether the right of privacy is implied, as in the Federal Constitution, or expressed, as in the Illinois Constitution, the Illinois Supreme Court has made clear that not all individual concerns properly fall within its scope.

Plaintiffs, in support of their claim, rely on *People v. Jackson* (1983), 116 Ill. App. 3d 430, 435, 452 N.E.2d 85, 89, where the court acknowledged, before ultimately denying plaintiff relief, that information in bank records is protected because they contain "many aspects of *** [a depositor's] personal affairs, opinion, habit and associations," and the following quote from the Bill of Rights Committee:

> " '[I]t [is] essential to the dignity and well being of the individ-

ual that every person be guaranteed a zone of privacy in which his thoughts and highly personal behavior [are] not subject to disclosure or review. The new provision creates a direct right to freedom from such invasions of privacy by government or public officials.' " (VI Proceedings of the Sixth Illinois Constitutional Convention, Committee Proposals, at 32 (1970).)

The issue thus becomes whether one's political affiliation is "highly personal" as defined by *Jackson* and the Bill of Rights Committee. We think not.

While having a voice in elections is regarded as one of our most important and protected rights (*Williams v. Rhodes* (1968), 393 U.S. 23, 31, 21 L. Ed. 2d 24, 31, 89 S. Ct. 1, 10), and the vote itself traditionally within the "zone of privacy," such is not the case with party affiliation. As the court in *Pontikes v. Kusper* (N.D. Ill. 1972), 345 F. Supp. 1104, 1109, stated with respect to a Federal challenge to the Illinois election laws:

"The voter's choice of candidates in a single party's primary is not disclosed. The only public declaration he is called upon to make is to choose which party primary to participate in. Any imposition this places on the voter is minimal. Moreover, whatever burden is suffered is outweighed by the state's 'compelling' interest in preventing election fraud."

Based on the above passage, as well as excerpts from the Constitutional Convention (see III Proceedings of the Sixth Illinois Constitutional Convention, Verbatim Transcripts, at 1525, 1738 (1970)), it appears that the Bill of Rights Committee's prohibition against disclosing matters of a "highly personal" nature more properly refers to the type of information contained in banking records, as in *Jackson*, and collected by credit associations, income tax services, and investigative institutions. Such information, unlike one's party affiliation, reveals much about a person's activities and financial affairs, and therefore could be subject to misuse.

In addition to *Jackson*, none of the other decisions cited by plaintiffs are relevant to the question before this court. The considerations raised by public disclosure of one's party affiliation are unlike the strip search issue raised in *People v. Seymour* (1979), 80 Ill. App. 3d 221, 398 N.E.2d 1191, *rev'd on other grounds* (1981), 84 Ill. 2d 24, 416 N.E.2d 1070, or the electronic surveillance issues raised in *State v. Glass* (Alaska 1978), 583 P.2d 872, and *White v. Davis* (1975), 13 Cal. 3d 757, 533 P.2d 222, 120 Cal. Rptr. 94.

Given that we find one's party affiliation does not constitute a privacy right under the Illinois Constitution, we need not consider

whether defendants have demonstrated a compelling State interest to warrant its invasion.

For the foregoing reasons, the trial court's dismissal of plaintiffs' complaint is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.