144 N.J. Super. 243 (1976)
365 A.2d 211
WILLIAM E. KENNY AND CATHERINE McGOVERN HAVRILESKY, PLAINTIFFS-APPELLANTS,
v.
BRENDAN T. BYRNE, GOVERNOR OF NEW JERSEY AND INDIVIDUALLY, WILLIAM F. HYLAND, ATTORNEY, GENERAL OF NEW JERSEY AND INDIVIDUALLY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1976.
Decided October 5, 1976.
*247 Before Judges CARTON, KOLE and LARNER.
Mr. William S. Greenberg argued the cause for plaintiffs-appellants (Messrs. Sterns & Greenberg, attorneys; Mr. Michael J. Herbert on the brief).
Mr. Michael A. Santaniello, Deputy Attorney General, argued the cause for defendants-respondents (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Mark I. Siman, Deputy Attorney General, on the brief).
Mr. Henry Ramer, attorney for Common Cause, filed an amicus curiae brief.
The opinion of the court was delivered by LARNER, J.A.D.
This case involves an attack upon the constitutionality of an executive order of the Governor requiring high echelon state employees to file financial disclosure statements.
*248 On March 12, 1975, Governor Byrne issued Executive Order No. 15 which requires certain employees of the Executive Branch of State Government to file for public disclosure comprehensive financial statements of all assets and liabilities, business interests and sources of income. Employees affected by this order are the heads and deputy or assistant heads of principal departments and the heads and assistant heads of divisions of the principal departments. Executive Order No. 15 [1974] N.J. Laws 772-776. Approximately 150 employees are in these categories.
Plaintiffs are both employed in the Executive Branch of State Government and are subject to the order. William E. Kenny is Assistant Secretary of Agriculture and Catherine McGovern Havrilesky is Director of Field Services in the Department of Education. They have complied with the requirements of the order by filing financial statements with the Governor, the Executive Commission on Ethical Standards and the Attorney General. The major thrust of their complaint and oral argument on appeal was focused upon the validity of the order's directive that the Commission file a copy of each statement with the Secretary of State for public inspection and copying, in accordance with the provisions of the Right to Know Law, N.J.S.A. 47:1A-1 et seq. They assert that this provision mandates full public disclosure without means of assuring confidentiality, and thus constitutes an impermissible invasion of their privacy.
Plaintiffs' action was brought in the Chancery Division to restrain the public disclosure of the financial data filed pursuant to the executive order. The trial judges, within the framework of the pleadings, properly considered the matter as a narrow issue bringing into question solely the order's requirement that the statements be filed with the Secretary of State subject to public inspection under the Right to Know Law. The judge concluded that such a requirement was valid and without constitutional infirmity and entered summary judgment for defendants.
*249 Interestingly enough, plaintiffs' counsel at oral argument reiterated this limited attack on the order, pointing out that plaintiffs had no objection to the filing of the financial statements with the Governor, the Executive Commission on Ethical Standards and the Attorney General in the form required by the order, so long as the data was kept confidential and not available for public inspection. Nevertheless, appellants' brief has interlaced therein attacks on the constitutional validity of the substantive provisions of the order, and the briefs of the State and amicus have responded accordingly.
In view of the importance of the public issue involved and the precedential impact of our decision upon nonparty state employees, we deem it appropriate to consider this appeal not only on the limited issue presented to the trial court but also on the broader issues involving the constitutional validity of the order.

I
At the outset we observe that plaintiffs' argument, centered upon the provision for filing of the financial statements with the Secretary of State, has no merit whatever. In fact, this provision of the order is only significant as a matter of administrative detail, designating the office of the Secretary of State as the permanent depository for the filed statements. Such filing with the Secretary of State does not add or subtract from the public disclosure which would be available were the filing limited to the Executive Commission on Ethical Standards.
This conclusion is derived from the interplay of the Right to Know Law (N.J.S.A. 47:1A-1 et seq.), the Conflicts of Interest Law (N.J.S.A. 52:13D-12 et seq.) and Executive Order No. 15. The Conflicts of Interest Law (N.J.S.A. 52:13D-21) establishes the Executive Commission on Ethical Standards in the Department of Law and Public Safety. It has certain functions relating to complaints, investigations, hearings, determinations and advisory *250 opinions involving violation of the Conflicts of Interest Law by employees of the Executive Branch of State Government. As a duly constituted Commission, all its records are subject to public inspection under the Right to Know Law (N.J.S.A. 47:1A-2) unless mandated to the contrary by any other statute, legislative resolution, executive order, court rule, administrative regulation or federal law. See Irval Realty v. Bd. of Public Utility Comm'rs, 61 N.J. 366 (1972). Neither the order nor any other statute or regulation contains a limitation on the public inspection of these records filed with the Executive Commission on Ethical Standards. The order merely directs the Commission to review the statements for their conformity with the requirements and other applicable provisions of law, and when approved, to file them with the Secretary of State.
Since no exception has been carved out by any official edict for curtailment of public inspection of the financial disclosure statements required by Executive Order No. 15, they would be readily available for public inspection when lodged with the Executive Commission on Ethical Standards. The additional provision for filing with the Secretary of State thus adds no greater opportunity for public scrutiny than a limited filing with the Commission. It is for that reason that plaintiffs' narrow objection to filing with the Secretary of State was held to be specious by the trial judge and is considered equally specious by this court.

II
Appellants' brief raises the question of the authority of the Governor to issue the executive order, contending that it is ultra vires and beyond his constitutional powers. This contention is manifestly without merit.
The Governor is vested with the executive power of the State. N.J. Const. (1947), Art. V, § 1, par. 1. As the head of the Executive Branch of government he has the duty and power to supervise all employees in each principal department *251 of that branch. Id., Art. V, § 4, par. 2. Of necessity, this includes the inherent power to issue directives and orders by way of implementation in order to insure efficient and honest performance by those state employees within his jurisdiction. Such power stems from the Governor's responsibility under the foregoing constitutional provisions as well as Art. V, § 1, par. 11, which requires that he "take care that the laws be faithfully executed."
The objective of the 1947 Constitution was the creation of a strong executive. See "Report of the Committee on Executive Militia and Civil Officers, 2 Proceedings of the Constitutional Convention of 1947, 1121, 1122. To achieve this goal, the major principles of modern state administrative reorganization were incorporated into the 1947 Constitution:
These principles  directed toward the achievement of maximum efficiency and economy in the execution of State administrative activities, are:
(1) integration of all administrative activities of the State along functional lines within a few well-balanced principal departments;
(2) establishment of direct lines of responsibility for the administration of such functions and activities  from the Governor, through the department heads, to the subordinate officers of each department;
(3) providing the Governor with executive authority commensurate with his responsibilities to the people of the State, * * *.
[Milmed, "The New Jersey Constitution of 1947," in N.J.S.A. Const. 91 at 103-104]
Unmistakably, the executive power reposed in the Governor under the Constitution, expressed in terse comprehensive terms, must be given life and meaning by investing him with the authority to implement his responsibilities. See Russo v. Governor of New Jersey, 22 N.J. 156, 165-166 (1956); Ass'n of N.J. Coll. Fac. v. Bd. of Higher Ed. 112 N.J. Super. 237, 246-247 (Law Div. 1970). To conclude otherwise is to negate the intent of the framers of the Constitution of 1947.
*252 Since the executive order applies only to employees within the Executive Branch of government it does not encroach upon the prerogatives of the other branches of government. It is an order well within the power of the executive and does not require legislative fiat for its validity. For the same reason, the Governor's power to carry out his constitutional executive responsibilities is not curtailed in any degree by the legislative enactment of the Conflicts of Interest Law (N.J.S.A. 52:13D-12 et seq.). Indeed, the very purpose of that law is furthered and implemented by the executive order under consideration.

III
It is urged that the executive order violates the right of privacy of affected employees. We consider a similar attack with reference to a municipal ordinance in Lehrhaupt v. Flynn, 140 N.J. Super. 250, 260-262 (App. Div. 1976), and concluded that the public employee's right of privacy is not absolute and must be subordinated to the competing superior right of the public to know "facts relevant to the performance or potential performance of its public officials." As we pointed out:
Whether the test of validity applied to the disclosure provisions of the ordinance in question is that of a compelling state interest (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); cf. Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)) or of a reasonable relationship between the purposes and provisions of the legislation. (McDonald v. Board of Election Comm'rs., 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)), there can be little question that there exists a significant interest of the public to demand financial disclosure from its officials in the quest for more responsible clean government. The public official, on the other hand, should be ready to subordinate his right of privacy to the extent that it may be appropriate to effectuate the common weal. By accepting public employment an individual steps from the category of a purely private citizen to that of a public citizen. And in that transition he must of necessity subordinate his private rights to the extent that they may compete or conflict with the superior right of the public to achieve honest and efficient government. [at 261-262]
*253 The legal analysis of and authorities cited in Lehrhaupt are equally applicable herein. We therefore refer to that opinion for a more complete explication of the legal principles involved without unnecessary repetition in this opinion.
We do note, however, that three of the cases which have upheld compulsory disclosure statutes in face of a challenge as an invasion of privacy were subsequently appealed to the United States Supreme Court and dismissed for want of a substantial federal question. See Fritz v. Gorton, 83 Wash.2d 275, 517 P.2d 911 (Sup. Ct. 1974), app. dism. 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974); Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (Sup. Ct. 1972), app. dism., 412 U.S. 925, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973); Montgomery Cty. v. Walsh, 274 Md. 502, 336 A.2d 97 (Ct. App. 1975), app. dism., 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976). This method of disposition represents a decision by the Supreme Court on the merits of the appeal and may therefore be considered as an affirmance of the meritorious constitutional issue decided by the respective state courts. See Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed. 2d 223 (1975); Comment, 76 Colum. L. Rev. 508 (1976).
In view of the foregoing it is apparent that the real issue from a constitutional standpoint is not whether the State may require financial disclosure by public officials and employees. It is, rather, whether the order is so overbroad in its requirements as to constitute an impermissible invasion of the right of privacy. Such a determination is governed by the interdiction that the invasion of the privacy right of the individual must be minimized by utilizing the narrowest means which can be designed to achieve the public purpose. See Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510, 515-516 (1965); NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325, 338 (1964).
Executive Order No. 15 is comprehensive in scope, compelling disclosure by the employee of the following data relating *254 to himself and his spouse: (1) all assets and liabilities, with a description and identification of each, except for liabilities less than $5,000 owed to a natural person; (2) a list of all sources of income for the previous year, without the necessity of revealing the amounts "unless specifically requested by the Governor, the Attorney General or the Executive Commission on Ethical Standards" (certain listed gifts need not be reported); (3) list of offices, directorships and positions held by the employee or the spouse with any firm which does business with or is licensed or regulated by a state agency. Executive Order No. 15 [1974] N.J. Laws 772, 773-775.
The order relates the necessity for the full disclosure requirements not only to the need of preventing conflicts of interest but also to maintain the "trust and confidence of the people by avoiding the appearance of impropriety" and "to restore the public's faith and confidence in its government representatives and * * * guard against conduct violative of the public trust." Executive Order No. 15, supra at 773. In other terms, the intent of the Governor's directive is not only to ferret out actual or apparent conflicts of interest but also to disclose to public view all financial data which may be relevant in guarding against corruption and dishonesty in government.
Undoubtedly, the preparation of the disclosure statement constitutes a burden for the affected officials. And it may prove to be embarrassing to present officeholders or deterring to those aspiring to those offices in the future. Nevertheless, such objections have no legal significance when compared to the paramount right of the people to honest and impartial performance by their government employees.
The nature of the evils sought to be exposed and prevented are such that no less than a broad comprehensive inquiry can suffice if the end is to be achieved. The constitutional validity of such an order from the viewpoint of overbreadth is tested not by the depth of the inquiry but rather by the presence of a rational relationship between *255 the disclosure requirements and their purpose. If the full objective of the regulation cannot be achieved by other more limited means, the charge of overbreadth loses its validity. See Illinois State Employees Ass'n v. Walker, 57 Ill.2d 512, 526, 315 N.E.2d 9, 17 (Sup. Ct. 1974), cert. den. sub nom. Troopers Lodge No. 41 v. Walker, 419 U.S. 1058, 95 S.Ct. 642, 42 L.Ed.2d 656 (1974); In re Kading, 70 Wis.2d 508, 526, 235 N.W.2d 409, 418 (Sup. Ct. 1975).
In our opinion, the disclosure requirements of the executive order, though broad in scope, are reasonably related to the salutary purposes thereof. Plaintiffs advance only a general objection to the order's overbreadth and point to the public disclosure of the filed statements and the inclusion of the economic facts of the spouse as objectionable features. Moreover, plaintiffs have not offered any alternative means, more limited than the order's full public disclosure, to achieve the legitimate aim of restoring the public's trust in government.
We cannot conceive of a means of tailoring the order which would narrow the scope of disclosure and still preserve the integrity of its purpose, unless it be to allow dishonest employees to escape the detection sought to be accomplished. It is manifest from current governmental exposes on the national scene that public scrutiny is the most effective and successful therapy for the prevention and preservation of honesty in government. The Governor's decision to expose to public scrutiny the financial data pertaining to decision-making officials of State Government represents a fair and reasonable objective, designed to maximize the public benefit to be derived from the filed statements. It is untenable legal doctrine, constitutional or otherwise, that the State must choose a means which is less effectual in order to achieve its aims. See Storer v. Brown, 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714, 727 (1974).
Public disclosure of officials' financial statements have been sustained in other jurisdictions. See County of Nevada v. MacMillen, 11 Cal.3d 662, 114 Cal. Rptr. 345, 522 P.2d *256 1345 (Sup. Ct. 1974); Illinois State Employees Ass'n v. Walker, supra, 57 Ill.2d 512, 315 N.E.2d 9; Montgomery Cty. v. Walsh, supra, 274 Md. 502, 336 A.2d 97; In re Kading, supra, 70 Wis.2d 508, 235 N.W.2d 409; Stein v. Howlett, supra, 52 Ill.2d 570, 289 N.E.2d 409; Fritz v. Gorton, supra, 83 Wash.2d 275, 517 P.2d 911.
No reported case has been cited or found by us which holds that the requirement compelling the filing of the financial information is invalid because of the provision for public disclosure. We find nothing objectionable to that feature of the order.
We now turn to the provision relating to the disclosure of the same financial data pertaining to the spouse of the official. Again, revelations of similar data of the spouse have been approved as a valid exercise of governmental power in County of Nevada v. MacMillen; Illinois State Employees Ass'n v. Walker, supra; Montgomery Cty. v. Walsh, Fritz v. Gorton, and In re Kading, all supra.
The rationale of the decisions in these cases is that the financial holdings of a spouse are as significant in determining conflict of interest as those of the officeholder. The relationship between spouses is normally such that one who must make a decision as an officeholder is potentially subject to the same influences and pressures, whether that officeholder or his or her spouse is financially involved in the transaction. Furthermore, the absence of a provision inclusive of a spouse would obviously open the door to possible evasion of the requirements of the order by intrafamily transfers.
It should be noted that the order requires the filing by the officeholder and not by the spouse, and imposes sanctions only for a willful violation. It therefore follows that if for some legitimate reason, such as a state of separation, the state employee does not know or cannot obtain the necessary information concerning his or her spouse, the employee cannot be subjected to the penalties of the order. Under such circumstances he or she can only be expected to furnish that information which he or she knows or can obtain *257 This element of willfulness remedies the apparent objection of the trial court in Lehrhaupt to the ordinance requirement relating to spouses. See Lehrhaupt v. Flynn, 129 N.J. Super. 327, 334 (Ch. Div. 1974). In Lehrhaupt that particular issue was not before us on appeal and was therefore not considered. 140 N.J. Super. 250 (App. Div. 1976). We do, however, reject the rationale of the trial court in Lehrhaupt and find that the requirement of data pertaining to the spouse is a necessary and reasonable regulation related to the purposes of the directive, and therefore valid.

IV
The final contention of plaintiffs is that Executive Order No. 15 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. They urge that the classification therein is unreasonable and arbitrary because the order is only applicable to a limited group of state employees.
It is axiomatic that a classification in a statute or executive order does not offend the Equal Protection Clause if it conceivably has some reasonable basis to justify the same. Mere inequality or difference in treatment does not suffice to support a charge of unconstitutional discrimination. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1910). And a classification must be upheld under any reasonable set of facts unless there is a showing of invidious discrimination. Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1348, 1 L.Ed.2d 1485, 1490 (1957).
A classification is presumed to be constitutional and the one who attacks it has the burden of showing that it is arbitrary and without a reasonable basis to support it. David v. Vesta Co., 45 N.J. 301, 315 (1965). Plaintiffs have utterly failed to sustain this burden.
A perusal of the class of employees encompassed by the order reflects a sound and reasonable basis for the selection *258 made by the Governor. The affected employees are upper level officials who bear the major responsibility for carrying out the functions of State Government. They personally participate in the decision-making process and are therefore most likely to become involved in conflicts of interest or other improper activities.
The mere omission of other employees from the ambit of coverage of the Order does not in itself render the classification invalid. Lehrhaupt v. Flynn, supra, 140 N.J. Super. at 267; see N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 601 (1967), cert. den. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967). The executive has wide discretion in selecting the classes of personnel to be regulated in carrying out the policy and purposes of the order.
We find no basis for the argument that the classification selected by the Governor in Executive Order No. 15 is unreasonable.
We affirm the summary judgment entered in favor of defendants. And in view of the tenor of this opinion, we modify the order for judgment, dated July 3, 1975, so as to vacate the proviso for administrative relief pertaining to the constitutionality of public disclosure of specific items.