379 So.2d 570 (1980)
Ted GIDEON and Rebecca L. Gideon
v.
ALABAMA STATE ETHICS COMMISSION et al.
78-527.
Supreme Court of Alabama.
January 11, 1980.
*571 Fred Blanton, Birmingham, for appellants.
Charles A. Graddick, Atty. Gen. and Rosa G. Hamlett, Asst. Atty. Gen., for appellees.
TORBERT, Chief Justice.
The plaintiffs-appellants, Rebecca Gideon and her husband, Ted Gideon, filed suit seeking declaratory relief as to the application of the State Ethics Act, Code 1975, § 36-25-1, et seq. Rebecca Gideon is employed as a Birmingham police officer. After a recent salary increase to an amount in excess of $15,000 annually, Ms. Gideon became subject to the financial reporting and disclosure provisions applicable under the Act to all public employees. The Act, defining "Public Employee," reads:
Any employee of state, county or municipal governments who has administrative and discretionary authority for the receipt or expenditures of public funds or who earns in excess of $15,000.00 annually, but shall not include those persons who are primarily engaged in teaching duties in all schools, colleges, and universities in the state. Code 1975, § 36-25-1(9).
Ted Gideon is a practicing attorney and, as the spouse of a public employee under the Act, his wife would be required to file a statement of his economic interests. Code 1975, § 36-25-14.
The Gideons contend that the Act, as applied to them, violates their rights of due process and equal protection, and also invades their constitutional right of privacy. From a summary judgment against them, they appeal. We affirm.
The issues presented, which have not heretofore been decided, are:
1. Whether the Act is unconstitutional insofar as it applies to the class of governmental employees who earn in excess of $15,000 annually; and
2. Whether the Act is unconstitutional insofar as it compels financial disclosure on the part of the spouses and dependents of persons primarily subject to the Act.

ISSUE NUMBER ONE
Issue number one is best resolved by approaching it from the three constitutional *572 challenges which appellants make to the $15,000 threshold of Code 1975, § 36-25-1(9).

Sub-Issue A.
Does the Act, which requires financial disclosure by certain public employees (as defined in Code 1975, § 36-25-1(9)), invade a "zone of privacy" of those employees which is protected by the United States Constitution?
The United States Supreme Court has never held that the Constitution guarantees an absolute right of privacy; rather that Court has recognized certain "zones of privacy" protected by the penumbra emanating from the First, Fourth, Fifth, Ninth and Fourteenth Amendments.[1] The question with which we are presented is not whether the appellants' right of privacy has been invaded by the disclosure requirements; but whether the financial interests of a public employee are protected by a "zone of privacy." In each case in which the United States Supreme Court recognized a "zone of privacy," the interests invaded were not financial, but familial and personal, E.g., abortion, contraceptives, marriage.[2] As stated by Justice Rehnquist in Paul v. Davis, 424 U.S. 693, at 712, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1975):
While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. See Roe v. Wade, 410 U.S. 113, 152-153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176-178 (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581 (1967); Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1872-1873, 20 L.Ed.2d 889, 898 (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In Roe the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protectionmatters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the State's power to substantively regulate conduct.
The Illinois Supreme Court, when presented with the issue before this court, held:
The notion that a person's ownership of property, real or personal, lies somehow within a protected zone of privacy, is new. For more than a hundred years the revenue acts of this State have provided, and they still provide, that schedules for the listing, under oath, of personal property for tax purposes shall be furnished to each person owning property subject to taxation.

. . . . .
. . . We do not deal in this case with the most intimate relationships of husband and wife or with an effort by the State to control their decisions as to whether and when to have their children. We deal rather with a requirement that the financial affairs of persons who are paid by the public and who occupy positions of high public trust be disclosed.

. . . . .

*573 We conclude as did the Supreme Court of Washington in Fritz v. Gorton (1974), 83 Wash.2d 275, 517 P.2d 911, appeal dismissed for want of substantial Federal question (1974), 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208, that financial disclosures required of State employees do not deprive them of their right of privacy guaranteed by the Constitution of the United States.
Illinois State Employees Association v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (1974).
The Fifth Circuit Court of Appeals upheld the constitutionality of Florida's Sunshine Amendment which required financial disclosure by elected officials, Plante v. Gonzalez, 575 F.2d 1119 (5th Cir. 1978); and the constitutionality of the Federal Ethics in Government Act of 1978, Duplantier v. United States, 606 F.2d 654 (5th Cir. 1979); under challenges which argued that those acts violated the right of privacy of the individuals involved. We recognize that the United States Supreme Court has applied the strict scrutiny test to financial disclosures, thus seemingly according some protection to such disclosures. Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975). A close examination of that case, however, reveals that the protection was accorded, not to financial disclosures in general, but only where they encroached on First Amendment rights.
Without deciding whether all financial affairs of all public employees are protected by a zone of privacy, we hold in light of the legitimate state interests fostered by the Act that the disclosures required in the instant case do not violate the United States Constitution by impinging on the employees' financial privacy. For these reasons the statute passes constitutional muster as to Sub-Issue A.

Sub-Issue B.
Does Code 1975, § 36-25-1(9), applying only to those public employees who earn more than $15,000 annually, violate the Equal Protection Clause or Due Process Clause of the United States Constitution or Alabama Constitution?
The dissent states that "privacy challenges are more correctly analyzed as requests for due process rather than equal protection," citing Justice Stewart's concurrence in Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Zablocki is inapposite to the instant case because Zablocki involved a fundamental right (the right to marry) and the instant case involves no such right.
The United States Supreme Court has established two tests to determine whether a statute draws a classification which violates the Equal Protection Clause of the Fourteenth Amendment or whether that statute denies a person substantive due process of law. The Court applies the "strict scrutiny test" where the classification is based on "suspect criteria" or affects some fundamental right. The traditional indicia of a suspect class are: (1) A class determined by characteristics which are solely an accident of birth, Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1972); and (2) A class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process," San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1972). The classifications which the United States Supreme Court has held are suspect have been drawn along racial lines, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or were based on an individual's alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The Court has recognized as fundamental, the right to vote and to associate freely, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); the right to travel interstate, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and those familial rights referred to supra which fall within a recognized "zone of privacy." Since the instant case involves *574 neither a "suspect class" nor a "fundamental right," the rational basis test is the proper test to apply to either a substantive due process challenge or an equal protection challenge. Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose. In Buckley v. Valeo, supra, the Supreme Court recognized two proper governmental purposes for disclosure statutes: (1) They deter actual corruption and avoid the appearance of corruption, and (2) disclosure requirements are an essential means of gathering the data necessary to detect violations of the law. Buckley v. Valeo, 424 U.S. 1 at 67, 68, 96 S.Ct. 612 at 657, 658, 46 L.Ed.2d 659 (1975). Clearly, the disclosure of a public employee's economic interests is rationally related to the two purposes above.
On November 19, 1979, the Fifth Circuit Court of Appeals used the same analysis in upholding the Federal Ethics in Government Act of 1978 under equal protection and due process challenges. Duplantier v. United States, 606 F.2d 654 (5th Cir. 1979). That case is instructive in aiding us to decide the instant case because the challenged act in Duplantier, supra, was very much like the act in question in the instant case. The Fifth Circuit took note that the act before it drew no suspect classifications, impinged on no fundamental rights, and applied the rational basis test holding the disclosure requirement rationally related to the purposes of the act. The Court took note of those legislative purposes referred to in Buckley v. Valeo, supra, and suggested a possible third purpose for disclosure acts, I. e., promoting public confidence in government, and in the integrity of public employees.
The United States Supreme Court has recently applied a third test in cases involving disclosure statutes, i. e., balancing the government's interests against the interests of the individuals affected. Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); and Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The Fifth Circuit has also applied this balancing test in Plante v. Gonzalez, 575 F.2d 1119 (5th Cir. 1978), where the constitutionality of Florida's Sunshine Amendment, which required financial disclosure of elected officials, was upheld.
An ingredient which must be factored into the balancing test is the fact that the individuals involved in the instant case are public employees. Justice Knight, speaking for this Court in Heck v. Hall, 238 Ala. 274, 190 So. 280 (1939), a case which involved a constitutional challenge to the Merit System Act, held that the legislature has authority to impose qualifications on those who aspire to public employment.
A careful reading of the Constitution of Alabama will disclose nothing to indicate that the legislature, in dealing with offices and employments of its creation, did not possess a free hand in imposing qualifications upon those who would aspire to appointment to such offices and employments. The right to create necessarily carried with it the right to prescribe lawful qualifications, to the end that the state should be served only by capable and efficient public servants.
Heck v. Hall, 238 Ala. 274 at 280, 190 So. 280 at 284 (emphasis supplied). For the reasons assigned in that opinion, we would hold that the legislature has the authority to require as a condition of employment that those public employees who occupy a position of public trust must disclose their financial status. We recognize that the means chosen by the legislature to reach those public employees who occupy a position of public trust (the $15,000 annual salary threshold) will not include every public employee entrusted with a high level of responsibility, nor will it exclude every public employee entrusted with less responsibility. In other words the means chosen does not exactly meet the purpose of the Act. However, it is not necessary for the legislative means to exactly fit the legislative purpose. All that is required is that the means chosen by the legislature must be rationally related to its legitimate purpose. *575 We hold that the $15,000 threshold is a rational means for the legislature to use to reach those public employees entrusted with the most responsibility. Thus, under the balancing test, the scales tip in the legislature's direction, and the classification passes muster under the equal protection challenge.

ISSUE NUMBER TWO
Is the Act unconstitutional insofar as it compels financial disclosure by an employee primarily subject to the Act of the financial interests of his or her spouse?
Again, because this portion of the statute draws no suspect classification and impinges on no fundamental rights, the constitutionality of the Act insofar as it applies to the spouses of those primarily subject to the Act must be determined by applying the rational basis test. Applying that test, we hold that the Act's application to spouses and dependents is rationally related to the proper legislative purposes of preventing and detecting corruption among public employees and fostering the public's confidence in its government. Not only is the means of accomplishing the legislative purpose (i. e., disclosure by an employee of his or her spouse's financial interests) reasonable, but it is necessary to make the Act effective. Absent a safe-guard provision the purposes of the Act could be thwarted by a public officer or employee concealing his economic interests by placing them in his spouse's name.
For the foregoing reasons, we hold that Code 1975, § 36-25-1, et seq., passes constitutional muster under the instant challenges.
AFFIRMED.
BLOODWORTH, MADDOX, ALMON and SHORES, JJ., concur.
BEATTY, J., with whom EMBRY, J., joins, concurs specially.
JONES, J., with whom FAULKNER, J., joins, dissents.
BEATTY, Justice (concurring specially):
The constitutionality of the questioned provision of the Ethics Act hinges upon "whether [it] is a rational means of advancing a valid state interest." If the regulation is "reasonably related to a valid government interest," it must be allowed to stand. Under that premise Code of 1975, § 36-25-1(9) is constitutional.
This Court presumes that statutes duly enacted by the legislature are constitutional and will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. Alabama Dairy Commission v. Food Giant, Inc., Ala., 357 So.2d 139 (1978). The party challenging the constitutionality of a statute has the burden of establishing its invalidity. Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237, 301 So.2d 551 (1974). In my opinion, plaintiffs have not established beyond a reasonable doubt that § 36-25-1(9), Code, is not reasonably calculated to further a legitimate state objective.
The legislature's objectivepreventing impropriety or the appearance thereof on the part of public servants in positions of responsibilityis admittedly legitimate. The question, then, is whether requiring financial disclosure on the part of public employees earning more than $15,000 annually bears some rational relationship to the attainment of that end. In my opinion it does; for as the dissent observes, "common experience bears out the rule that the level of salary is usually commensurate with that of responsibility." A police officer with sufficient experience to reach the $15,000 salary level is one whose position inspires more public trust and confidence than an officer who is new on the job. The legislatively-created category is therefore at least rationally related to the advancement of the legislature's valid objective. That is the only relationship that is constitutionally required. I would affirm.
EMBRY, J., concurs.
JONES, Justice (dissenting):
I respectfully dissent.
*576 In Comer v. City of Mobile, 337 So.2d 742 (Ala. 1976), this Court held the financial disclosure provisions of the Alabama State Ethics Act to be constitutional insofar as they applied to "Public Officials" who are defined under the Act to include:
"[A]ny elected official ... and any person appointed under state, county, or municipal law to an office where .. such person has ... authority for the receipt or expenditure of public funds ... and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto...." § 36-25-1(11).
Rebecca Gideon is neither an elected official nor does she hold appointment to any of the bodies enumerated above; instead, she is a governmental employee. Further, it is not disputed that Ms. Gideon, as a police officer, has no authority for the "receipt or expenditure of public funds." The applicability of the Act to both her and her spouse arises solely from her status as a municipal employee earning in excess of $15,000 annually.
The right of privacy has been recognized as a fundamental freedom from intrusion by government derived from the "penumbra" or shadow of several provisions of the Bill of Rights and the Due Process Clause of the Fourteenth Amendment. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
The Supreme Court emphasized in Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), however, that only personal rights which can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in the constitutional guarantee of personal privacy. These "fundamental" areas of privacy have been characterized as involving "... matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). See also, Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In these fundamental areas of privacy, the Supreme Court has applied something approaching an equal protection "compelling state interest" test and has carefully examined state actions to determine whether they were the least restrictive means to reach a compelling goal.
Though it appears the United States Supreme Court has yet to extend privacy as a fundamental right much beyond the context of intimate human relations, Mr. Justice Powell of that Court has stated:
"Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy." California Bankers Association v. Shultz, 416 U.S. 21, 78, 94 S.Ct. 1494, 1526, 39 L.Ed.2d 812 (1974) (Powell, J., concurring, joined in by Blackmun, J.).
This language was quoted with approval by the majority of the Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
"Moreover, the invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for `[f]inancial transactions can reveal much about a person's activities, associations, and beliefs.' " 424 U.S. at 66, 96 S.Ct. at 657.
The implication is clear that financial privacy, if not fundamental, is at least important as an area to be protected against unwarranted and arbitrary government intrusion. That protecting the confidentiality of a person's financial matters is important is without doubt; it is also without doubt that this interest has not yet come to be regarded as "fundamental." Moreover, to subject financial disclosure laws to the same strict scrutiny accorded to laws impinging on rights arising out of the context of intimate human relations would draw into question many common forms of regulation involving disclosure.
Therefore, the interests involved here are more properly subject to the balancing test *577 common to Fourteenth Amendment due process claims. The Fourteenth Amendment of the Federal Constitution, as well as the due process provisions of the Constitution of Alabama, is a general prohibition against arbitrary and unreasonable governmental action. It stands for the proposition that, when the government acts, it must act in a manner which is neither arbitrary nor unreasonable. The constitutionality of the Act in the posture in which it is raised here will be determined by comparing the interests served by the Act with those interests against which it impinges.
The Gideons challenge the Act, as it applies to them, on both equal protection and due process grounds. In many cases, it makes little difference which clause of the Fourteenth Amendment is used to test the statute in question. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The question which is raised generally by Fourteenth Amendment challenges is whether the statute in question is a rational means of advancing a valid state interest. Therefore, a regulation not reasonably related to a valid government interest cannot withstand a due process challenge, and, similarly, one which arbitrarily divides citizens into different classes violates the Equal Protection Clause of the Amendment. While due process and equal protection arguments may often be transformed into each other so as to include the same standard of review under either characterization, there is nevertheless some value in maintaining the conceptual distinction between the two, and privacy challenges are more correctly analyzed as requests for due process rather than equal protection. See Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), (Justice Stewart, concurring in the judgment).
In the case before us, therefore, the legitimate public interest sought to be advanced by the Act must be considered in balance with the competing interest of the Gideons in maintaining their financial privacy in order to determine whether the Act, as applied to them, violates their constitutional right of due process. There can be little question that there exists a significant and legitimate interest of the public to demand financial disclosure from those public officials and employees who occupy positions of responsibility in government.
In addition to this State (see Comer v. City of Mobile, supra), financial disclosure statutes and regulations have been sustained, in principle, in the states of Washington, Illinois, Wisconsin, Maryland, New York, Florida, Minnesota, New Jersey and California. See Fritz v. Gorton, 83 Wash.2d 275, 517 P.2d 911 (1974), app. dism'd, 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974); Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (1972), app. dism'd, 412 U.S. 925, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973); Montgomery County v. Walsh, 274 Md. 502, 336 A.2d 97 (1975), app. dism'd, 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976); Evans v. Carey, 53 A.D.2d 109, 385 N.Y.S.2d 965 (1976), aff'd, 40 N.Y.2d 1008, 391 N.Y.S.2d 393, 359 N.E.2d 983 (1976); Goldtrap v. Askew, 334 So.2d 20 (Fla.1976); Illinois State Employees Ass'n. v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (1974), cert. den. sub nom. Troopers Lodge No. 41 v. Walker, 419 U.S. 1058, 95 S.Ct. 642, 42 L.Ed.2d 656 (1974); In re Kading, 70 Wis.2d 508, 235 N.W.2d 409 (1976); Klaus v. Minnesota Ethics Comm'n, 309 Minn. 430, 244 N.W.2d 672 (1976); Kenny v. Byrne, 144 N.J.Super. 243, 365 A.2d 211 (App.Div.1976); City of Carmel-by-the-Sea v. Young, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970); County of Nevada v. MacMillen, 11 Cal.3d 662, 114 Cal.Rptr. 345, 522 P.2d 1345 (1974). It is interesting to note that the two state courts that did strike down disclosure laws for privacy reasons struck down laws that applied to local employees and minor officials as well as high state officials. See, City of Carmel-by-the-Sea, supra; Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2-10), 396 Mich. 465, 242 N.W.2d 3 (1976). On the other hand, financial disclosure statutes and regulations applicable to both public officials and public employees have been *578 upheld in Illinois,[1] Maryland,[2] New York,[3] and New Jersey.[4]
This Court has already determined Alabama's state ethics law to be constitutional as it applies to elected officials or persons appointed to state, county, or municipal office who have authority for the receipt or expenditure of public funds. Comer v. City of Mobile, supra. It would seem to follow, then, that the Ethics Act is also constitutional as it applies to state, county, and municipal employees who have "administrative and discretionary authority for the receipt or expenditures of public funds." The legitimate public interest which is served by compelling financial disclosure, together with the rationale which makes such disclosure constitutionally valid, applies equally to elected and appointed officials having authority over public funds and to government employees possessed of the same authority. The challenged provision of the statute goes further, however, to require financial disclosure by state, county, and municipal employees who merely earn in excess of $15,000 annually, regardless of whether such employees have any authority with respect to public funds. §§ 36-25-1(9) and 36-25-14, Ala.Code 1975.
The precise question for determination before us can be formulated as follows: Is a legitimate public interest advanced by a statute which compels financial disclosure by public employees on the basis of salary alone? The Illinois statute litigated in Illinois State Employees Ass'n v. Walker, supra, was just such a statute. In that case, the Supreme Court of Illinois upheld the provision as embracing "that relatively small percentage of all employees of the State who occupy the most responsible positions." Illinois State Employees Ass'n v. Walker, 57 Ill.2d at 520, 315 N.E.2d at 13. The Illinois case was subsequently appealed to the United States Supreme Court on a writ of certiorari, and Mr. Justice Douglas, concurring in the denial of certiorari, wrote that the State has "an undeniably strong interest in placing beyond question the integrity of its public service." Troopers Lodge No. 41 v. Walker, supra, 419 U.S. at 1059, 95 S.Ct. at 643. Mr. Justice Douglas's statement can be elaborated upon by adding that ethics legislation, in order to create a climate of honest government perceptible to the public at large, seeks not only to eliminate actual wrongdoing and conflicts of interests but the appearance of impropriety and conflict as well. Undoubtedly, the State has a valid interest, on behalf of its citizens, in ensuring that its public officials and employees conduct public business with integrity and honesty and with no conflict between their private interests and the public trust which they hold. It is appropriate, therefore, that ethics legislation be aimed not only at public officials and employees having express authority over public funds but at certain categories of public employees and civil servants in high positions of responsibility as well.
To the above it must be added, however, that the State has no legitimate interest, which would withstand due process scrutiny, in extending financial disclosure requirements to every public employee in every situation. The competing interest of citizens in maintaining the privacy of their finances compels that a distinction be drawn between public employees at large and public employees who hold positions of particular responsibility. This distinction is rationally made on the basis of salary scale since common experience bears out the rule that the level of salary is usually commensurate with that of responsibility.
As already noted above, the Illinois Court, in Illinois State Employees Ass'n. v. *579 Walker, supra, 57 Ill.2d at 520, 315 N.E.2d at 13, upheld that State's statute requiring financial disclosure by all state employees earning at least $20,000 per year on the basis that the standard embraced a "relatively small percentage of all employees of the State who occupy the most responsible positions." Here, however, the State has failed to make a similar showing that the salary amount presently specified in the statute will reach only a small percentage of public employees who hold the most responsible positions. To the contrary, I would take judicial notice that the $15,000 amount currently set by the statute embraces a wide range of public employees. Indeed, Rebecca Gideon was not originally subject to the Act, but became so subject after annual and merit increases, even though her position and responsibilities remain the same. In this respect, then, the Act bears no reasonable relationship to a legitimate end of the State in preventing impropriety or the appearance thereof on the part of public servants in high positions of responsibility.
I would hold, therefore, that, with respect to the provision in the Act which compels financial disclosure by all employees earning in excess of $15,000 annually, the statute is arbitrary and thus violates the right of due processunder both the Federal Constitution and the Constitution of Alabamaof those persons who, by virtue of this provision alone, are presently subject to it. As a further clarification, I do not reject in principle that financial disclosure by public employees may be compelled under the Act on the basis of salary alone; I merely would hold that whatever salary scale is fixed by statute must be reasonably calculated to reach, more or less, just that class of public employees for whom compulsory disclosure is rationally related to a legitimate public interest.
It seems clear that if due process guarantees have a field of operation to protect the financial privacy of a State Highway Department "water boy," then its protective shield ought to extend to the instant city employee and her husband.
FAULKNER, J., concurs.
NOTES
[1] Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).
[2] Ibid.
[1] "Each person who receives $20,000 or more per year from the State." Illinois State Employees Ass'n v. Walker, supra.
[2] "[A]ny other official, employee or appointee" where disclosure is determined by the designated authority as "desirable to promote the trust and confidence of the citizens of the County...." Montgomery County v. Walsh, supra.
[3] Any employee earning $30,000 or more per year." Evans v. Carey, supra.
[4] "[C]ertain employees of the Executive Branch." Kenny v. Byrne, supra.