I respectfully dissent. *Page 576 
In Comer v. City of Mobile, 337 So.2d 742 (Ala. 1976), this Court held the financial disclosure provisions of the Alabama State Ethics Act to be constitutional insofar as they applied to "Public Officials" who are defined under the Act to include:
 "[A]ny elected official . . . and any person appointed under state, county, or municipal law to an office where . . such person has . . . authority for the receipt or expenditure of public funds . . . and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto . . ." § 36-25-1 (11).
Rebecca Gideon is neither an elected official nor does she hold appointment to any of the bodies enumerated above; instead, she is a governmental employee. Further, it is not disputed that Ms. Gideon, as a police officer, has no authority for the "receipt or expenditure of public funds." The applicability of the Act to both her and her spouse arises solely from her status as a municipal employee earning in excess of $15,000 annually.
The right of privacy has been recognized as a fundamental freedom from intrusion by government derived from the "penumbra" or shadow of several provisions of the Bill of Rights and the Due Process Clause of the Fourteenth Amendment.Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678,14 L.Ed.2d 510 (1965).
The Supreme Court emphasized in Roe v. Wade, 410 U.S. 113,152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), however, that only personal rights which can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in the constitutional guarantee of personal privacy. These "fundamental" areas of privacy have been characterized as involving ". . . matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct." Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155,47 L.Ed.2d 405 (1976). See also, Paris Adult Theatre I v. Slaton,413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In these fundamental areas of privacy, the Supreme Court has applied something approaching an equal protection "compelling state interest" test and has carefully examined state actions to determine whether they were the least restrictive means to reach a compelling goal.
Though it appears the United States Supreme Court has yet to extend privacy as a fundamental right much beyond the context of intimate human relations, Mr. Justice Powell of that Court has stated:
 "Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy." California Bankers Association v. Shultz, 416 U.S. 21, 78, 94 S.Ct. 1494, 1526, 39 L.Ed.2d 812
(1974) (Powell, J., concurring, joined in by Blackmun, J.).
This language was quoted with approval by the majority of the Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612,46 L.Ed.2d 659 (1976).
 "Moreover, the invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for `[f]inancial transactions can reveal much about a person's activities, associations, and beliefs.'" 424 U.S. at 66, 96 S.Ct. at 657.
The implication is clear that financial privacy, if not fundamental, is at least important as an area to be protected against unwarranted and arbitrary government intrusion. That protecting the confidentiality of a person's financial matters is important is without doubt; it is also without doubt that this interest has not yet come to be regarded as "fundamental." Moreover, to subject financial disclosure laws to the same strict scrutiny accorded to laws impinging on rights arising out of the context of intimate human relations would draw into question many common forms of regulation involving disclosure.
Therefore, the interests involved here are more properly subject to the balancing test *Page 577 
common to Fourteenth Amendment due process claims. The Fourteenth Amendment of the Federal Constitution, as well as the due process provisions of the Constitution of Alabama, is a general prohibition against arbitrary and unreasonable governmental action. It stands for the proposition that, when the government acts, it must act in a manner which is neither arbitrary nor unreasonable. The constitutionality of the Act in the posture in which it is raised here will be determined by comparing the interests served by the Act with those interests against which it impinges.
The Gideons challenge the Act, as it applies to them, on both equal protection and due process grounds. In many cases, it makes little difference which clause of the Fourteenth Amendment is used to test the statute in question. Bolling v.Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The question which is raised generally by Fourteenth Amendment challenges is whether the statute in question is a rational means of advancing a valid state interest. Therefore, a regulation not reasonably related to a valid government interest cannot withstand a due process challenge, and, similarly, one which arbitrarily divides citizens into different classes violates the Equal Protection Clause of the Amendment. While due process and equal protection arguments may often be transformed into each other so as to include the same standard of review under either characterization, there is nevertheless some value in maintaining the conceptual distinction between the two, and privacy challenges are more correctly analyzed as requests for due process rather than equal protection. See Zablocki v. Redhail, 434 U.S. 374,98 S.Ct. 673, 54 L.Ed.2d 618 (1978), (Justice Stewart, concurring in the judgment).
In the case before us, therefore, the legitimate public interest sought to be advanced by the Act must be considered in balance with the competing interest of the Gideons in maintaining their financial privacy in order to determine whether the Act, as applied to them, violates their constitutional right of due process. There can be little question that there exists a significant and legitimate interest of the public to demand financial disclosure from those public officials and employees who occupy positions of responsibility in government.
In addition to this State (see Comer v. City of Mobile, supra), financial disclosure statutes and regulations have been sustained, in principle, in the states of Washington, Illinois, Wisconsin, Maryland, New York, Florida, Minnesota, New Jersey and California. See Fritz v. Gorton, 83 Wn.2d 275,517 P.2d 911 (1974), app. dism'd, 417 U.S. 902, 94 S.Ct. 2596,41 L.Ed.2d 208 (1974); Stein v. Howlett, 52 Ill.2d 570,289 N.E.2d 409 (1972), app. dism'd, 412 U.S. 925, 93 S.Ct. 2750,37 L.Ed.2d 152 (1973); Montgomery County v. Walsh, 274 Md. 502,336 A.2d 97 (1975), app. dism'd, 424 U.S. 901, 96 S.Ct. 1091,47 L.Ed.2d 306 (1976); Evans v. Carey, 53 A.D.2d 109,385 N.Y.S.2d 965 (1976), aff'd, 40 N.Y.2d 1008, 391 N.Y.S.2d 393,359 N.E.2d 983 (1976); Goldtrap v. Askew, 334 So.2d 20 (Fla. 1976); Illinois State Employees Ass'n. v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (1974), cert. den. sub nom. Troopers LodgeNo. 41 v. Walker, 419 U.S. 1058, 95 S.Ct. 642, 42 L.Ed.2d 656
(1974); In re Kading, 70 Wis.2d 508, 235 N.W.2d 409 (1976);Klaus v. Minnesota Ethics Comm'n, 309 Minn. 430, 244 N.W.2d 672
(1976); Kenny v. Byrne, 144 N.J. Super. 243, 365 A.2d 211
(App.Div. 1976); City of Carmel-by-the-Sea v. Young, 2 Cal.3d 259,85 Cal.Rptr. 1, 466 P.2d 225 (1970); County of Nevada v.MacMillen, 11 Cal.3d 662, 114 Cal.Rptr. 345, 522 P.2d 1345
(1974). It is interesting to note that the two state courts that did strike down disclosure laws for privacy reasons struck down laws that applied to local employees and minor officials as well as high state officials. See, City ofCarmel-by-the-Sea, supra; Advisory Opinion on Constitutionalityof 1975 PA 227 (Questions 2-10), 396 Mich. 465, 242 N.W.2d 3
(1976). On the other hand, financial disclosure statutes and regulations applicable to both public officials and public employees have been *Page 578 
upheld in Illinois,[1] Maryland,[2] New York,[3] and New Jersey.[4]
This Court has already determined Alabama's state ethics law to be constitutional as it applies to elected officials or persons appointed to state, county, or municipal office who have authority for the receipt or expenditure of public funds.Comer v. City of Mobile, supra. It would seem to follow, then, that the Ethics Act is also constitutional as it applies to state, county, and municipal employees who have "administrative and discretionary authority for the receipt or expenditures of public funds." The legitimate public interest which is served by compelling financial disclosure, together with the rationale which makes such disclosure constitutionally valid, applies equally to elected and appointed officials having authority over public funds and to government employees possessed of the same authority. The challenged provision of the statute goes further, however, to require financial disclosure by state, county, and municipal employees who merely earn in excess of $15,000 annually, regardless of whether such employees have any authority with respect to public funds. §§ 36-25-1 (9) and36-25-14, Ala. Code 1975.
The precise question for determination before us can be formulated as follows: Is a legitimate public interest advanced by a statute which compels financial disclosure by public employees on the basis of salary alone? The Illinois statute litigated in Illinois State Employees Ass'n v. Walker, supra, was just such a statute. In that case, the Supreme Court of Illinois upheld the provision as embracing "that relatively small percentage of all employees of the State who occupy the most responsible positions." Illinois State Employees Ass'n v.Walker, 57 Ill.2d at 520, 315 N.E.2d at 13. The Illinois case was subsequently appealed to the United States Supreme Court on a writ of certiorari, and Mr. Justice Douglas, concurring in the denial of certiorari, wrote that the State has "an undeniably strong interest in placing beyond question the integrity of its public service." Troopers Lodge No. 41 v.Walker, supra, 419 U.S. at 1059, 95 S.Ct. at 643. Mr. Justice Douglas's statement can be elaborated upon by adding that ethics legislation, in order to create a climate of honest government perceptible to the public at large, seeks not only to eliminate actual wrongdoing and conflicts of interests but the appearance of impropriety and conflict as well. Undoubtedly, the State has a valid interest, on behalf of its citizens, in ensuring that its public officials and employees conduct public business with integrity and honesty and with no conflict between their private interests and the public trust which they hold. It is appropriate, therefore, that ethics legislation be aimed not only at public officials and employees having express authority over public funds but at certain categories of public employees and civil servants in high positions of responsibility as well.
To the above it must be added, however, that the State has no legitimate interest, which would withstand due process scrutiny, in extending financial disclosure requirements to every public employee in every situation. The competing interest of citizens in maintaining the privacy of their finances compels that a distinction be drawn between public employees at large and public employees who hold positions of particular responsibility. This distinction is rationally made on the basis of salary scale since common experience bears out the rule that the level of salary is usually commensurate with that of responsibility.
As already noted above, the Illinois Court, in Illinois StateEmployees Ass'n. v. *Page 579 Walker, supra, 57 Ill.2d at 520, 315 N.E.2d at 13, upheld that State's statute requiring financial disclosure by all state employees earning at least $20,000 per year on the basis that the standard embraced a "relatively small percentage of all employees of the State who occupy the most responsible positions." Here, however, the State has failed to make a similar showing that the salary amount presently specified in the statute will reach only a small percentage of public employees who hold the most responsible positions. To the contrary, I would take judicial notice that the $15,000 amount currently set by the statute embraces a wide range of public employees. Indeed, Rebecca Gideon was not originally subject to the Act, but became so subject after annual and merit increases, even though her position and responsibilities remain the same. In this respect, then, the Act bears no reasonable relationship to a legitimate end of the State in preventing impropriety or the appearance thereof on the part of public servants in high positions of responsibility.
I would hold, therefore, that, with respect to the provision in the Act which compels financial disclosure by all employees earning in excess of $15,000 annually, the statute is arbitrary and thus violates the right of due process — under both the Federal Constitution and the Constitution of Alabama — of those persons who, by virtue of this provision alone, are presently subject to it. As a further clarification, I do not reject in principle that financial disclosure by public employees may be compelled under the Act on the basis of salary alone; I merely would hold that whatever salary scale is fixed by statute must be reasonably calculated to reach, more or less, just that class of public employees for whom compulsory disclosure is rationally related to a legitimate public interest.
It seems clear that if due process guarantees have a field of operation to protect the financial privacy of a State Highway Department "water boy," then its protective shield ought to extend to the instant city employee and her husband.
FAULKNER, J., concurs.
[1] "Each person who receives $20,000 or more per year from the State." Illinois State Employees Ass'n v. Walker, supra.
[2] "[A]ny other official, employee or appointee" where disclosure is determined by the designated authority as "desirable to promote the trust and confidence of the citizens of the County. . . ." Montgomery County v. Walsh, supra.
[3] Any employee earning $30,000 or more per year." Evans v.Carey, supra.
[4] "[C]ertain employees of the Executive Branch." Kenny v.Byrne, supra.